**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

GLENN BOWLES,

        Plaintiff,

v.                                     Case No. 20-13175

MACOMB COMMUNITY COLLEGE, *et al.*,

        Defendants.

_____/

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY AND GRANTING IN PART DEFENDANT MCC'S MOTION TO DISMISS

Plaintiff Glenn Bowles brings this action under 42 U.S.C. § 1983 alleging procedural and substantive due process violations. (ECF No. 12, PageID.270-76.) He also brings state law claims of wrongful termination, tortious interference with a contractual relationship, and libel. (*Id.*, PageID.276-82.) According to Plaintiff, he was terminated without justification from his position as an adjunct instructor at the Macomb County Police Academy ("MCPA"). Plaintiff claims he was wrongfully accused of inappropriate touching of students and using excessive force.

Defendant Macomb Community College ("MCC") has filed a motion to dismiss Plaintiff's claims for violations of procedural due process, § 1983 civil conspiracy, wrongful termination, and civil conspiracy to tortiously interfere with Plaintiff's contractual relationship. (ECF No. 18.) Plaintiff filed a response and Defendant replied. (ECF Nos. 21, 22.) After Defendant filed its reply brief, Plaintiff moved for leave to file a sur-reply and attached his sur-reply to the motion. (ECF No. 23.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR

7.1(f)(2). For the reasons provided below, the court will grant Plaintiff's motion for leave to file a sur-reply, and the court will grant in part Defendant's motion to dismiss.

## I. BACKGROUND

The following facts are either alleged in Plaintiff's complaint or agreed upon by the parties. In a motion to dismiss, the court accepts Plaintiff's factual allegations as true but makes no overt finding as to truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

MCPA employed Plaintiff as a defense tactics and firearms instructor from 2006 to 2019. (ECF No. 12, PageID.264.) Defendant MCC, a public college, administers MCPA. (*Id.*, PageID.263-64.) On May 16, 2019, representatives from the Macomb County Sheriff's Office ("MCSO") informed MCPA leadership that an MCSO cadet filed a complaint against Plaintiff, alleging that Plaintiff inappropriately touched and harassed students during drills and exercises. (*Id.*, PageID.265.)

Plaintiff claims Defendant Darga, who was an undersheriff at MCSO, had a long-running animus against Plaintiff. (*Id.*, PageID.265.) According to Plaintiff, Defendant Darga previously investigated Plaintiff for a domestic disturbance incident that occurred between Plaintiff and his ex-girlfriend. (*Id.*) Plaintiff alleges that Defendant Darga was closely involved in the 2019 investigation of Plaintiff's conduct toward cadets and manufactured false claims to destroy Plaintiff's relationship with Defendant MCC and MCPA. (*Id.*, PageID.265-70.)

On June 4, 2019, Plaintiff was suspended from duty pending notification from Defendant MCC's Human Resource Department. (*Id.*, PageID.266.) Defendant MCC initiated a Title IX investigation on June 5, 2019. (*Id.*) As part of the investigation, MCC

investigators informed MCPA Director Raymund Macksound that Defendant Darga had accused Plaintiff of striking a cadet "in the groin area which caused the cadet to drop a firearm that accidently discharged." (*Id.*) According to Plaintiff, the accusation was fabricated by Defendant Darga. (*Id.*, PageID.266-67.)

On September 16, 2019, Defendant MCC issued its Title IX investigation findings. (*Id.*, PageID.267.) The investigation concluded that Plaintiff had not committed a Title IX violation. (*Id.*) MCC investigators noted that Plaintiff could still be disciplined for violating "other college policies, procedures, or standards." (*Id.*)

Defendant Michigan Commission of Law Enforcement Standards ("MCOLES") began an independent investigation and in July 2019 interviewed cadets Plaintiff trained. (*Id.*, PageID.267.) Plaintiff met with an MCOLES investigator, Defendant Danny Rosa, on September 24, 2019. (*Id.*, PageID.267-68.) Defendant Rosa told Plaintiff that he had heard Plaintiff had "struck someone in the groin, who then dropped a weapon that discharged." (*Id.*, PageID.268.) Plaintiff apparently denied the allegation. (*Id.*)

Defendant MCOLES issued its investigative findings on December 26, 2019. (*Id.*, PageID.269.) It concluded that Plaintiff was unfit to conduct training of police cadets, and it prohibited Plaintiff from participating in future training programs. (*Id.*)

On February 12, 2020, MCC's Vice President of Human Resources, Defendant Denise Williams, sent Plaintiff an email with a letter attachment. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.) The letter informed Plaintiff that MCC had found that Plaintiff engaged in inappropriate conduct with students, including tickling, groin hits, inappropriate sexual comments, and excessive force. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2,

PageID.478-80.) MCC notified Plaintiff that it intended to pursue Plaintiff's termination because of the misconduct and scheduled a "*Loudermill* Hearing" for February 13, 2020. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.) The college offered Plaintiff an opportunity to respond to its findings. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.)

Plaintiff asked to reschedule the hearing, and it was reset for February 14, 2020. (ECF No. 18, PageID.438; ECF No. 21, PageID.634.) At the hearing, Defendant Williams informed Plaintiff of students alleging inappropriate behavior, and provided Plaintiff a summary of the investigative findings. (ECF No. 18, PageID.438; ECF No. 21, PageID.635.) Defendant MCC gave Plaintiff the opportunity to present evidence and respond to its findings. (ECF No. 18, PageID.438; ECF No. 21, PageID.635; ECF No. 12, PageID.269.) According to Plaintiff, he "explained that all of the training techniques he used were approved by the training manuals which were used at the [MCPA]." (ECF No. 12, PageID.269.) Later in the day on February 14, 2020, Defendant MCC terminated Plaintiff's employment with MCPA. (*Id.*, PageID.270.)

Plaintiff contacted his union representative and asked that his union, the Association of Adjunct Faculty of Macomb Community College ("AAFMCC"), initiate a grievance process challenging Defendant MCC's decision to terminate Plaintiff's employment. (*Id.*, PageID.270.) The grievance process, which includes arbitration before a neutral tribunal, was included in the union's collective bargaining agreement ("CBA") with MCC. (*Id.*, PageID.307.) On February 28, 2020, AAFMCC informed Plaintiff in writing that it would not initiate the grievance process on Plaintiff's behalf due

to an "insufficient probability of success." (*Id.*, PageID.318.) Under the CBA, Plaintiff could not file a grievance on his own. (*Id.*, PageID.271; ECF No. 18, PageID.463.)

Plaintiff filed his complaint on December 3, 2020. (ECF No. 1.) He brings claims against MCC, MCOLES, Macomb County, Williams, Timothy S. Bourgeois (Executive Director of MCOLES), Rosa, and Darga. (ECF No. 12, PageID.264.)

## II. STANDARD

Under Rule 12(b)(6), a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing motions under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by

reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### III. DISCUSSION

Plaintiff moves for leave to file a sur-reply. (ECF No. 23.) The decision "to grant or deny leave to file a sur-reply is committed to the sound discretion of the court." *Citizens Bank, N.A. v. Margolis*, Case No. 20-12393, 2020 WL 7640057, at *5 (E.D. Mich. Dec. 23, 2020) (Drain, J.) (quoting *Mohlman v. Deutsche Bank Nat'l Tr. Co.*, Case No. 15-11085, 2015 WL 13390184, at *1 (E.D. Mich. Sep. 4, 2015)). Plaintiff's sur-reply is only five pages long and responds to arguments Defendant MCC made in its reply brief. Thus, the court will grant the motion.

Defendant MCC moves to dismiss Plaintiff's claims that include Defendant MCC. Plaintiff brings the claims under procedural due process (Count I), § 1983 civil conspiracy to violate procedural due process (Count III), wrongful termination (Count VI), and civil conspiracy to tortiously interfere with Plaintiff's contractual relationship (Count VII). The court will dismiss the procedural due process and § 1983 claims with prejudice, and it will dismiss the wrongful termination and civil conspiracy to tortiously interfere with contract claims without prejudice. In addition, the court will dismiss without prejudice tortious interference with contract claims against Defendants Rosa and Darga (Counts VIII, X, XI).

## A. Procedural Due Process Against Defendant MCC (Count I)

Under the Fourteenth Amendment's Due Process Clause, governments must "provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). Due process is a "flexible" doctrine that "calls for such procedural protections as the particular situation demands." *Unan v. Lyon*, 853 F.3d 279, 291 (6th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). Courts engage in a two-step process when reviewing procedural due process claims. First, courts determine "whether a protected property interest exists." *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). Second, courts decide "what procedures are required to protect that interest." *Id.*

In Defendant's motion, it does not contest that Plaintiff "could not be disciplined or discharged except for just cause" under the CBA and Plaintiff "therefore had a protected property interest in his continued employment with the college." *See Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017) (quotations removed) (stating that an employee can demonstrate a property interest in continued employment if the employee has a "legitimate claim of entitlement to [the] position"). (ECF No. 18, PageID.456.) For purposes of this motion, the court will assume that Plaintiff has established a valid property interest. *See Singfield*, 389 F.3d at 565. Thus, the primary dispute is whether Defendant MCC afforded Plaintiff adequate process before terminating his employment. *See id.*

The Supreme Court in *Cleveland Board of Education v. Loudermill* established the framework for procedural due process challenges when a government body

terminates an individual's public employment. 470 U.S. 532 (1985). Balancing "the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination," the Court held that an employer can constitutionally provide limited pre-termination process when the employer has also established a complete evidentiary hearing post-termination. *Id.* at 546. Under *Loudermill*, prior to termination a public employee is entitled to only "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* "The limited, 'right-of-reply' pretermination hearing, as defined in *Loudermill*, is designed to invoke the employer's discretion, his sense of fairness and mutual respect, his willingness to reconsider." *Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir. 1988). By contrast, "[a] full, post-termination, adversary, trial-type hearing will serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee." *Id.*

Plaintiff does not focus his arguments on the process Defendant provided pre-termination. He alleges in his complaint, and admits in his briefing, that Defendant MCC informed Plaintiff, in writing, that it planned to terminate his employment and found that Plaintiff inappropriately touched and harassed students. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.) Defendant MCC scheduled a "*Loudermill* Hearing" and stated that Plaintiff had an opportunity to respond to the college's findings. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.) The hearing was held two days after the notice, and Defendant summarized investigative findings and informed Plaintiff of student allegations of

inappropriate conduct. (ECF No. 18, PageID.438; ECF No. 21, PageID.635.) Plaintiff

had the opportunity to present evidence and respond. (ECF No. 18, PageID.438; ECF

No. 21, PageID.635; ECF No. 12, PageID.269.) In fact, he used the time to explain that

all of his training techniques were legitimate. (ECF No. 12, PageID.269.) Defendant, in

its motion, claimed that it had provided Plaintiff all that is required under *Loudermill*,

(ECF No. 18, PageID.440), and Plaintiff responded "[n]o contest."[1] (ECF No. 21,

PageID.636.)

Plaintiff's central argument is that because "he was not provided a pre-

termination evidentiary hearing, his employer had an obligation to provide him with a

post-termination evidentiary hearing within a reasonable time after his termination."

(ECF No. 23, PageID.706.) After Plaintiff was terminated, he asked his union to initiate

the grievance process established under Defendant MCC's CBA. (ECF No. 12,

PageID.270.) AAFMCC had the option of challenging Plaintiff's termination in a full

evidentiary hearing in proceedings run by the American Arbitration Association.[2] (*Id.*,

PageID.307.) However, the union declined to pursue a grievance against Defendant

---

[1]      Plaintiff provides a vague and cursory argument that "exigent circumstances" did not require a *Loudermill* hearing, rather than a full evidentiary hearing prior to termination. (ECF No. 21, PageID.647.) Plaintiff cites no precedent that holds a pre-termination *Loudermill* hearing is constitutionally suspect when it is properly provided in conjunction with a full hearing post-termination. As the court stated, Plaintiff, in another portion of his briefing, accepts the adequacy of Defendant's pre-termination process. (ECF No. 21, PageID.636.) Further, Plaintiff fails to explain how sexual harassment and the inappropriate touching of students would not qualify as "exigent circumstances," even if such a standard were relevant to the court's inquiry.

[2]      Before submitting the case to arbitration, the union has the option to engage in "discussions with the immediate supervisor" and send written grievances to MCC administrators. (ECF No. 12, PageID.307.) Neither party argues that these informal procedures provide the "full, post-termination, adversary, trial-type [evidentiary] hearing" required under the Due Process Clause and *Loudermill*. *Duchesne*, 849 F.2d at 1008.

MCC, citing the "insufficient probability of success." (*Id.*, PageID.318.) Plaintiff argues that because he could not initiate the grievance process on his own, and AAFMCC declined to do so on his behalf, Defendant deprived Plaintiff of a full evidentiary hearing as required under the Due Process Clause and *Loudermill*. (ECF No. 21, PageID.647, 650.)

Plaintiff's argument is not convincing. "The law is . . . clear that grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process." *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004). A substantial body of caselaw holds that a union's choice to not represent an employee at a post-termination hearing does not constitute a due process violation on the part of the employer. This is true even if the employee cannot represent himself at the hearing and even if the hearing is the only method by which the employer satisfies due process requirements.

In *Rhoads v. Board of Education of Mad River Local School District*, a school bus driver lost her job after receiving a positive drug test. 103 F. App'x 888, 890 (6th Cir. 2004). The parties disputed whether the bus driver left her job voluntarily after being told she would be terminated or whether she was constructively discharged. *Id.* at 895. Nonetheless, after the bus driver left her job, she asked her union to contest her alleged termination in arbitration. *Id.* at 890. "[T]he Union—which held the exclusive right to pursue arbitration on her behalf—declined to do so." *Id.* The Sixth Circuit assumed that the bus driver had been deprived a valid property interest and that the process she received prior to arbitration was inherently biased and thus inadequate. *Id.* at 895-97. Even so, the court held that "[t]he fact that the Union elected not to pursue arbitration on

[the bus driver's] behalf does not amount to a deprivation of her right to due process by [her employer]." *Id.* at 897. "At most, the Union's decision constituted a breach of the duty of fair representation owed by it to [the bus driver]." *Id.* at 898.

Similarly, in *Greiner v. Macomb County* a highway maintenance worker brought a procedural due process claim against Defendant Macomb County. Case No. 17-2417, 2019 WL 8884615, at *1-2 (6th Cir. Aug. 16, 2019). The county negotiated a CBA with the worker's union to allow for arbitration of employment disputes post-termination, but the CBA gave the union exclusive rights to initiate arbitration. *Id.* at *3.  The worker was terminated for insubordination, and after his termination, the union declined to pursue arbitration. *Id.* Before the Sixth Circuit, the worker argued that he had not been given a post-termination hearing pursuant to *Loudermill*. *Id.* at *5. The court rejected the argument, noting that the CBA "permitted [the union] to pursue arbitration before a neutral decisionmaker." *Id.* The court held that the union's choice not to seek a post-termination hearing was not a procedural due process violation attributable to Defendant Macomb County. *Id.*

Finally, in *White v. Cleveland Board of Education*, two school bus drivers were terminated for failure to hold a valid driver's license and missing work. 861 F.2d 722 (Table), at *1 (6th Cir. Nov. 3, 1988). The drivers submitted a grievance against their former employer, but their union "failed to submit [their] claim[s] to final and binding arbitration as provided for in [a CBA]." *Id.* at *2. In a lawsuit, the drivers argued the employer violated procedural due process. *Id.* The court rejected the claim, reasoning that the bus drivers "could have proceeded to the fourth step had the union pursued their grievances to final and binding arbitration." *Id.* at *2, 4.

Assuming all allegations in the complaint are true, *Ashcroft*, 556 U.S. at 678, like the bus drivers in *Rhoads* and *White* and the maintenance worker in *Greiner*, Plaintiff was provided through his union's CBA the opportunity to participate in a full evidentiary hearing before a neutral tribunal. (ECF No. 12, PageID.307.) Plaintiff makes no allegation or claim that a proceeding before the American Arbitration Association would have failed under due process scrutiny if AAFMCC chose to pursue it. Defendant MCC negotiated with AAFMCC to establish a post-termination process that the union simply decided not to participate in. AAFMCC was Plaintiff's personal representative, and the union's intentional decision to not take advantage of Defendant MCC's post-termination hearing process is attributable only to the union, and not to Defendant MCC.[3] *See Rhoads*, 103 F. App'x 897; *Greiner*, 2019 WL 8884615, at *5; *White*, 861 F.2d 722 (Table), at *4. Plaintiff makes no allegation that Defendant MCC in any way interfered with AAFMCC's conclusion that the grievance process would not reverse Plaintiff's termination. (*Id.*, PageID.318.)

As the Sixth Circuit has repeatedly held, "[t]he fact that the Union elected not to pursue arbitration on [the employee's] behalf does not amount to a deprivation of [his]

---

[3]      Plaintiff argues that the holding in *Rhoads* is not applicable to this case because the bus driver in *Rhoads* was allowed to pursue informal procedures short of a full evidentiary hearing on her own, while in this case Plaintiff could not initiate any grievance process without union consent. (ECF No. 21, PageID.654.) However, Plaintiff does not attempt to argue that informal procedures short of an adversarial evidentiary hearing would satisfy procedural due process. *See supra* note 2. And the court in *Rhoads* assumed that all prior grievance processes the bus driver participated in were inadequate and inherently biased. *See* 103 F. App'x at 895-95. The court is not convinced that AAFMCC's choice to decline participation in procedures which are neither necessary nor sufficient to satisfy due process is material to the court's inquiry.

right to due process by [the employer]."[4] *Rhoads*, 103 F. App'x 897; *Greiner*, 2019 WL 8884615, at *5; *White*, 861 F.2d 722 (Table), at *4. "[I]t is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process," *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 623 (6th Cir. 2013) (quotations removed) (emphasis in original), and it is "the availability of recourse to a constitutionally sufficient administrative procedure," not the use of the procedure, that "satisfies due process requirements." *Farhat*, 370 F.3d at 596. If Plaintiff thinks his union should have participated in a post-termination hearing, he must bring a claim directly against AAFMCC.[5] *See Rhoads*, 103 F. App'x at 898 ("At most, the Union's decision constituted a breach of the duty of fair representation.").

---

[4]     Other circuits have come to the same conclusion as the Sixth Circuit. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (holding that a CBA grievance process satisfied due process despite the union "declin[ing] to bring a formal grievance" on behalf of the employee); *Armstrong v. Meyers*, 964 F.2d 948, 951 (9th Cir. 1992) (finding that a CBA grievance and arbitration process satisfied procedural due process even when "only the union could take [an employee's] grievance to arbitration, and the union refused to do so"); *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983) (holding that, even when an employer provides an inherently biased hearing, if the employee's union "had the ultimate power to make a . . . determination as to whether it would invoke [an] arbitration provision available under the collective bargaining agreement," due process was satisfied); *Winston v. U.S Postal Serv.*, 585 F.2d 198, 210 (7th Cir. 1978) (finding no violation of procedural due process where the union "declined [the employees'] requests to demand arbitration," and noting that the employees "could have sued the Union for breach of its duty to fairly represent them if the refusal to demand arbitration was not in good faith"); *Catlett v. Woodfin*, 13 F. App'x 412, 416 (7th Cir. 2001) (holding that a post-termination arbitration process satisfied due process despite the fact that the employee's union had to agree to arbitration, reasoning that when the employee or "the union acting on his behalf" does not "avail himself of . . . [a] post-deprivation hearing," it "is not the fault of the [employer]").

[5]     Plaintiff originally brought a breach of the duty of fair representation claim against AAFMCC, (ECF No. 1, PageID.17-18), but voluntarily dismissed the claim soon after he filed the complaint. (ECF No. 8.)

Plaintiff spends considerable energy contesting the court's finding but fails to cite a single case that holds a union's decision to not pursue a post-termination hearing is attributable to the employer under the Due Process Clause. *See*, *e.g.*, *Barkley v. City of Jackson*, 705 F. Supp. 390, 394-95 (W.D. Tenn. 1988) (holding that a city violated procedural due process when there was a "complete lack of notice or of any sort of pre-termination hearing," the city ignored the employee's request to reschedule a post-termination hearing, and the post-termination hearing was held in the employee's absence). (*See* ECF No. 21, PageID.650-660.) Instead, Plaintiff argues that the 2018 Supreme Court decision *Janus v. American Federation of State, County, and Municipal Employees* overruled all previously established caselaw on the topic. 138 S. Ct. 2448 (2018). (ECF No. 21, PageID.251-52.)

Despite Plaintiff's best efforts, *Janus* does not demand a different conclusion in this case. *Janus* had nothing to do with a union's choice to not participate in hearings after a public employee is terminated, and the case had nothing to do with procedural due process. In *Janus*, the Court held that extracting union "agency fees from nonconsenting employees" amounted to compelled speech under the First Amendment. 138 S. Ct. at 2463-65, 2486. After the decision, governments could no longer automatically funnel money from employee pay checks to finance unions' collective-bargaining activities, at least without the employee's affirmative consent. *Id.* at 2460-61, 2486. The Supreme Court in *Janus* did not discuss the delicate complexities of procedural due process law, did not consider the Due Process Clause's application in the public employee context or *Loudermill*, and did not mention or cite the Sixth Circuit's (or any other circuit's) holdings that a union's choice to not pursue a post-termination

hearing is not a violation of the Constitution. Further, the Sixth Circuit issued its *Greiner* decision over a year after *Janus*. As to be expected, the Sixth Circuit in *Greiner* made no mention of *Janus* or the First Amendment doctrine of compelled speech. Thus, in all, the *Janus* decision is not relevant or applicable to Plaintiff's procedural due process claim.

Finally, Plaintiff claims that a union's decision to not pursue a post-termination hearing amounts to a "transfer[] [of] constitutional obligation[s]" on the part of Defendant MCC. (ECF No. 23, PageID.708.) Not so. Defendant MCC has an obligation to provide notice and an opportunity to be heard. *See Warren*, 411 F.3d at 708. In compliance with the dictates of *Loudermill*, Defendant MCC established a process by which Plaintiff received notice of termination and had the opportunity to participate in both a pre-termination and post-termination hearing. Plaintiff's personal representative, AAFMCC, exercised its judgment to not pursue the available post-termination processes. There is no allegation that Defendant MCC had any involvement in AAFMCC's deliberative processes, and the union's decision as Plaintiff's representative cannot support a claim that Defendant MCC violated due process. *See Rhoads*, 103 F. App'x 897; *Greiner*, 2019 WL 8884615, at *5; *White*, 861 F.2d 722 (Table), at *4; *Jackson*, 721 F.2d at 933; *Armstrong*, 964 F.2d at 951; *Hennigh*, 155 F.3d at 1256; *Winston*, 585 F.2d at 210. Consequently, the court will dismiss Plaintiff's procedural due process claim against Defendant MCC.

## B.  Civil Conspiracy to Violate Procedural Due Process Against Defendants MCC, Williams, Rosa, and MCOLES (Count III)

Plaintiff also claims that Defendant MCC conspired with Defendants Williams, Vice President for Human Resources at MCC, Defendant Rosa, a MCOLES employee,

and Defendant MCOLES to violate Plaintiff's procedural due process rights. (ECF No. 12, PageID.273-74.) A civil conspiracy under § 1983 "is an agreement between two or more persons to injure another by unlawful action." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). To state a valid civil conspiracy claim under § 1983, a plaintiff must allege that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) (quotations removed).

Defendant asserts that Plaintiff's procedural due process rights were not violated and thus the claim of civil conspiracy must be dismissed. (ECF No. 18, PageID.466.) In his briefing, Plaintiff cites his arguments in support of the procedural due process claim against Defendant MCC, which the court rejected above, and concludes that the claim must survive. (ECF No. 21, PageID.660; *see also* ECF No. 23, PageID.709, Plaintiff's Sur-Reply ("[S]ince Plaintiff's due process claim does not fail . . . the conspiracy claim that he was denied due process . . . does not fail.").) Accepting Plaintiff's allegations as true, he has not stated a valid procedural due process claim as a matter of law. *Ashcroft*, 556 U.S. at 678. Because dismissal of the procedural due process claim against Defendant MCC is warranted, the court will also dismiss Plaintiff's § 1983 civil conspiracy claim.

**C. Wrongful Termination Against Defendant MCC (Count VI), Civil Conspiracy to Tortiously Interfere with Plaintiff's Contractual Relationship Against Defendants MCC, Williams, Rosa, and MCOLES (Count VII), and Tortious Interference with Contract Against Defendants Rosa and Darga (Counts VIII, X, XI)**

Plaintiff's final two claims against Defendant MCC rely primarily on his contractual rights under the CBA between Defendant MCC and AAFMCC. In his wrongful termination count, Plaintiff claims that Defendant MCC violated the terms of the CBA by depriving him of an evidentiary hearing and terminating his employment without cause. (ECF No. 12, PageID.276.) For the civil conspiracy count, Plaintiff alleges that Defendants MCC, Williams, Rosa, and MCOLES conspired to deprive Plaintiff of his contractual rights under the CBA. (*Id.*, PageID.276-77; ECF No. 21, PageID.666.)

The two claims are included under Plaintiff's "Pendent State Claims," and Plaintiff brings them under the court's supplemental jurisdiction. (ECF No. 12, PageID.263, 276 ("The Court has . . . supplemental jurisdiction over the Michigan state law claims.").) Plaintiff does not assert that any of the parties have diverse citizenship. Consequently, the court will decline to exercise jurisdiction over the claims and will dismiss them without prejudice.

A court may decline supplemental jurisdiction where "the claim raises a novel or complex issue of [s]tate law" or there are "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (4). In making this determination, the court considers several factors, including "the values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Plaintiff's wrongful termination claim is a complex hybrid of breach of contract and breach of duty of fair representation law. It is well established that, in order to claim that a public employer breached a CBA under Michigan law, a plaintiff must also claim that his union breached its duty of fair representation. *See Knoke v. East Jackson Pub. School Dist.*, 506 N.W.2d 878, 485 (Mich. Ct. App. 1993) ("[An employee] cannot pursue his breach of contract claim against [his employer] unless he is successful in his claim of breach of the duty of fair representation."); *City of Saginaw v. Chwala*, 428 N.W.2d 695, 697 (Mich. Ct. App. 1988) ("[B]ecause [the employee] has not demonstrated that his union breached its duty of fair representation, [his breach of contract] claim cannot be maintained."); *Sweat v. Detroit Housing Comm'n*, Case No. 347642, 2020 WL 2505233 (Mich. Ct. App. May 14, 2020) ("[A]n aggrieved employee cannot maintain an action against his or her employer for breach of contract unless it is first demonstrated that the union breached its duty of fair representation."). Both parties accept this framework. (ECF No. 18, PageID.467-68; ECF No. 21, PageID.637, Plaintiff's Response ("[I]t is not necessary to name the union as a defendant, as long as Plaintiff alleges and proves that there was a violation of the duty of fair representation.").) Thus, Plaintiff must plead a successful breach of the duty of fair representation on the part of AAFMCC before he can obtain relief under breach of contract against Defendant MCC.

The parties agree that Michigan has a six-month statute of limitations for breach of the duty of fair representation. *See Silbert v. Lakeview Educ. Ass'n, Inc.*, 466 N.W.2d 333, 334 (Mich. Ct. App. 1991) ("[T]he six-month limitation period under [Michigan's Public Employment Right's Act] is applicable . . . because a claim for breach of the duty

of fair representation constitutes an unfair labor practice claim."). (ECF No. 18, PageID.467; ECF No. 21, PageID.637.) Defendant MCC argues that, because a claim of breach of the duty of fair representation against AAFMCC is time barred, Plaintiff cannot maintain a breach of contract claim against Defendant MCC. (ECF No. 18, PageID.469.) Plaintiff accurately responds that the statute of limitations for breach of a CBA is generally six years. (ECF No. 21, PageID.662-63.) The Michigan Supreme Court in *American Federation of State, County and Municipal Employees v. Board of Education* held that a breach of CBA claim has a six-year statute of limitation. 457 Mich. 74, 90 (1998). Nonetheless, the plaintiff in *American Federation of State, County and Municipal Employees* was a union, not a worker, and the court did not discuss the statute of limitations for breach of the duty of fair representation or the nuances of a hybrid breach of contract and breach of duty of fair representation claim. *Id.*

If a six-month statute of limitations applied, Plaintiff argues that his claim is timely because the Governor of Michigan tolled statutes of limitations through emergency executive orders issued to combat the spread of the Coronavirus Disease ("COVID-19"). (ECF No. 21, PageID.663-64.) Both parties agree that the Michigan Supreme Court in *In re Certified Questions* held that the Governor of Michigan exceeded state statutory and constitutional authority in issuing orders after April 30, 2020. --- N.W.2d --- -, 2020 WL 5877599 (Mich. Oct. 2, 2020). (ECF No. 18, PageID.470-71; ECF No. 21, PageID.663-64.) However, the parties dispute the decision's effect. Defendant argues the Michigan Supreme Court's holding made the executive orders void *ab initio*, thus making any tolling attempted by the orders invalid. (ECF No. 18, PageID.471-72.) In

contrast, Plaintiff claims the executive orders had legal effect up to the date of the Michigan Supreme Court's decision in October 2020. (ECF No. 21, PageID.664-66.)

The parties dispute whether a six-month or six-year statute of limitations applies in the first place, and a Michigan court can properly review the competing precedents and provide a well-reasoned and articulate decision. State court litigation would benefit the parties, who would be given a final decision by a competent judicial body, and it would help resolve legal uncertainty in a complex legal area, sitting at the precarious crossroads between CBA contract disputes, fair union representation, and for-cause termination rights. The underling wrongful termination claim also demands difficult contract analysis and application of Michigan's law of public union CBA rights.

Further, the legal effect of the Governor of Michigan's COVID-19 executive orders involves significant and unresolved questions of state law. Neither party cites caselaw that has addressed and affirmatively resolved the question, and Michigan courts are best equipped to review their own state jurisprudence and competently determine when the Governor's executive orders ceased to have legal effect. If the executive orders were void *ab initio*, as Defendant MCC argues, the result could have a substantial impact on litigants throughout the Michigan court system. It is best for state courts, who can provide a clear and binding answer, to resolve this important state law question.

As previously discussed, the court will dismiss Plaintiff's federal claims against Defendant MCC, and the court will avoid the "unnecessary resolution of state law issues" best considered before a Michigan court. *Beechy v. Central Mich. Dist. Health Dep't*, 274 F. App'x 481, 482 (6th Cir. 2008) (quoting *Hankins v. The Gap, Inc.*, 84 F.3d

797, 803 (6th Cir. 1996)) (affirming district court decision to decline supplemental jurisdiction where the claims involved complex questions of state government in which there was a "paucity of decisions"); *Doe v. Sundquist*, 106 F.3d 702, 708 (6th Cir. 1997) (reasoning that a district court should decline supplemental jurisdiction where there are novel issues of state constitutional law and "[c]oncerns of comity" support allowing state courts to decide "purely state law issues"); *Weser v. Goodson*, 965 F.3d 507, 519 (6th Cir. 2020) (holding that a claim presented a "novel issue of state law" where, "to the knowledge of both the parties and [the court], [the issue] has never been squarely addressed by [state] courts").

Plaintiff also brings a claim of civil conspiracy to tortiously interfere with Plaintiff's contractual relationship. The claim is intimately connected to the claim of wrongful termination. *See Knight Enters. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) (holding that, to prove tortious interference with contract, a plaintiff must show that a contract was breached). Specifically, Plaintiff alleges that Defendant MCC worked with Defendants Williams, Rosa, and MCOLES to undermine Plaintiff's contractual rights under the CBA. (ECF No. 12, PageID.276-77; ECF No. 21, PageID.666, Plaintiff's Response ("Plaintiff alleges that [Defendants] engaged in a civil conspiracy . . . to tortiously interfere with Plaintiff's contractual relationship with MCC, i.e., with his right under the CBA to be terminated only for good cause after having been afforded an evidentiary hearing.").) Along with the wrongful termination claim, the court will also decline jurisdiction over the tortious interference with contract claim. It would neither foster judicial efficiency nor facilitate a convenient resolution of the dispute to establish

separate lawsuits on the same contract dispute. The court will avoid duplicative litigation and dismiss the civil conspiracy claim without prejudice.

Plaintiff brings claims asserting that Defendants Rosa and Darga tortiously interfered with his employment contract and caused Defendant MCC to breach the CBA.[6] (ECF No. 12, PageID.278-81.) In the complaint, Plaintiff alleges that Defendant Rosa and Darga, through their involvement with investigations into Plaintiff's reported misbehavior, induced Defendant MCC to fire Plaintiff without just cause. (*Id.*) Although the claims are not brought against Defendant MCC, they are closely related to the wrongful termination claim against Defendant MCC that the court will dismiss without prejudice. Resolution of the tortious interference with contract claims will be tied to resolution of Plaintiff's wrongful termination claim. *See Knight Enters.*, 829 N.W.2d at 348. The court does not find a compelling interest in dividing review of the same legal questions into two lawsuits. Such a division would only detract from convenience and judicial efficiency, and Michigan courts can efficiently and competently resolve the tortious interference claims. Just as the court will dismiss without prejudice Plaintiff's claim of civil conspiracy to tortiously interfere with his contractual relationship, the court will also dismiss Plaintiff's tortious interference with contract claims against Defendants Rosa and Darga.

## IV. CONCLUSION

Plaintiff has not stated a claim under the Due Process Clause against Defendant MCC. Thus, Plaintiff's procedural due process claim against Defendant MCC and his §

---

[6]     Plaintiff brings one claim against Defendant Rosa in his individual capacity and two claims against Defendant Darga, one in her individual capacity and the other in her official capacity. (ECF No. 12, PageID.278-81.)

1983 civil conspiracy claim against Defendants MCC, Williams, MCOLES, and Rosa will be dismissed with prejudice. In addition, considering the importance of federal-state comity, the interest in avoiding unnecessary resolution of important state law questions, the convenience of the parties, and judicial economy, the court will decline supplemental jurisdiction over Plaintiff's wrongful termination claim against Defendant MCC, Plaintiff's claim against Defendants MCC, Williams, MCOLES, and Rosa for civil conspiracy to tortiously interfere with his contractual relationship, and Plaintiff's tortious interference with contract claims against Defendants Rosa and Darga.

Five counts of Plaintiff's complaint now remain: a procedural due process claim against Defendants MCOLES and Bourgeois (Count II), two substantive due process claims against Defendants Darga and MCSO (Counts IV and V), and two libel claims against Defendants Rosa and Darga (Counts IX and XII). Accordingly,

IT IS ORDERED that Plaintiff's Motion for Leave to File a Sur-Reply (ECF No. 23) is GRANTED.

IT IS FURTHER ORDERED that Defendant MCC's Motion to Dismiss (ECF No. 18) is GRANTED IN PART. The procedural due process claim against Defendant MCC (Count I) and the § 1983 civil conspiracy claim against Defendants MCC, Williams, MCOLES, and Rosa (Count III) are DISMISSED WITH PREJUDICE. The wrongful termination claim against Defendant MCC (Count VI), the civil conspiracy to tortiously interfere with Plaintiff's contractual relationship claim against Defendants MCC, Williams, MCOLES, and Rosa (Count VII), the tortious interference with contract claim

against Defendant Rosa (Count VIII), and the tortious interference with contract claims

against Defendant Darga (Counts X and XI) are DISMISSED WITHOUT PREJUDICE.

s/Robert H. Cleland                              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 7, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, May 7, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-13175.BOWLES.MotiontoDismissandMotionforLeavetoFileSur-
Reply.RMK.RHC.2.docx