**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

GLENN BOWLES,

           Plaintiff,

v.                                       Case No. 20-13175

MACOMB COMMUNITY COLLEGE, _et al._,

           Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS BOURGEOIS AND ROSA'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiff Glenn Bowles brings this action under 42 U.S.C. § 1983, alleging procedural and substantive due process violations. (ECF No. 12, PageID.270–76.) He also brings two state libel claims. (_Id._, PageID.276–82.) Plaintiff alleges he was wrongfully accused of inappropriate touching of students and using excessive force while teaching as an adjunct instructor at the Macomb County Police Academy ("Academy"), which is administered by Macomb Community College ("College").

On May 7, 2021, the court dismissed with prejudice a procedural due process claim against the College and a § 1983 civil conspiracy claim against the College, the College's Vice President of Human Resources Denise Williams, the Michigan Commission on Law Enforcement Standards ("MCOLES"), and MCOLES Manager of the Standards Compliance Section, Danny Rosa. (ECF No. 29.) Additionally, in the interest of federal-state comity, the court declined to exercise supplemental jurisdiction over related state claims against the College, Williams, MCOLES, Rosa, and Macomb County Sheriff's Office ("Sheriff's Office") undersheriff Elizabeth Darga. (_Id._) Since that

order, the parties stipulated and dismissed MCOLES as a defendant. (ECF No. 38.) The remaining claims are a procedural due process claim against Defendant Bourgeois (Count II), two substantive due process claims against Defendants Darga and the Sheriff's Office (Counts IV and V), and two libel claims against Defendants Rosa and Darga (Counts IX and XII).

Now before the court is a Motion to Dismiss for Failure to State a Claim filed by Defendants Bourgeois and Rosa. (ECF No. 36.) Plaintiff filed a response, and Defendant replied. (ECF Nos. 42, 43.) Having reviewed the parties' briefs, the court finds a hearing to be unnecessary.[1] E.D. Mich. LR 7.1(f)(2).

## I.   BACKGROUND

The following facts are either alleged in Plaintiff's complaint or agreed upon by the parties. In a motion to dismiss, the court accepts Plaintiff's factual allegations as true but makes no overt finding as to truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was a law enforcement officer from 1989 until his retirement in 2012. (ECF No. 12, PageID.264.) While he was still serving as a law enforcement officer, Plaintiff was employed by the Academy as a defense tactics and firearms instructor from 2006 to 2019. (*Id.*) Defendant College, a public entity, administers the Academy. (*Id.*, PageID.263–64.) On May 16, 2019, representatives from the Sheriff's Office met with the Academy's leadership and informed the Academy personnel that a Sheriff's Office cadet filed a complaint against Plaintiff, alleging that Plaintiff inappropriately

---

[1] Plaintiff filed a motion for leave to file a sur-reply. The motion will be granted. The court has reviewed it in its entirety and observes that it adds no value to the arguments already presented on this motion.

touched and harassed students during drills and exercises. (*Id.*, PageID.265.) At the meeting, the Sheriff's Office noted that an investigation had been initiated and any wrongdoing would give rise to potential charges with the Macomb County prosecutor. (*Id.*) It was indicated that the Sheriff's Office would forward the results of the investigation only to the Academy. (*Id.*)

Notably, Plaintiff claims Defendant Darga, who was an undersheriff in the Sheriff's Office, had a long-running animus against Plaintiff. (*Id.*) According to Plaintiff, Defendant Darga previously investigated Plaintiff for a domestic disturbance incident that occurred between Plaintiff and his ex-girlfriend. (*Id.*) Plaintiff alleges that Defendant Darga was closely involved in the 2019 investigation of Plaintiff's conduct toward cadets and manufactured false claims to destroy Plaintiff's relationship with both the College and Academy. (*Id.*, PageID.265–70.)

On June 3, 2019, the College's Denise Williams contacted the Academy's Training Director Raymond Macksoud to discuss the complaint received from the Sheriff's Office. (*Id.*, PageID.266.) The next day, the College contacted Macksoud telling him that Plaintiff was suspended from instructing at the College until further notice. (*Id.*) A Title IX investigation was initiated on June 5, 2019. (*Id.*) As part of the investigation, the College's investigators informed Macksoud that Defendant Darga had accused Plaintiff of striking a cadet "in the groin area which caused the cadet to drop a firearm that accidently discharged." (*Id.*) According to Plaintiff, the accusation was fabricated by Defendant Darga. (*Id.*, PageID.266–67.)

The College requested that Plaintiff not participate in the August 2019 police training; Defendant Rosa notified Macksoud of the College's request on July 8, 2019. (*Id.*, PageID.267.)

Between approximately July 22, 2019, and July 26, 2019, MCOLES representatives, as part of their own investigation, interviewed various cadets as to the allegations against Plaintiff. (*Id.*) Plaintiff met with Defendant Rosa on September 24, 2019. (*Id.*, PageID.267–68.) Defendant Rosa told Plaintiff that he had heard Plaintiff had "struck someone in the groin, who then dropped a weapon that discharged." (*Id.,* PageID.268.) Plaintiff apparently denied the allegation. (*Id.)*

On December 23, 2019, Defendant Rosa sent Macksoud an Investigative Summary and MCOLES Conclusion ("Investigative Summary"), which analyzed the evidence of the investigation. (ECF No. 36-1, PageID.888.) Macksoud received it three days later. (ECF No. 12, PageID.269.) The Investigative Summary concluded that Plaintiff was unfit to conduct training of police cadets, and it prohibited Plaintiff from participating in future MCOLES approved training programs. (*Id.*)

On February 12, 2020, Williams sent Plaintiff an email with a letter attachment. (ECF No. 18, PageID.437–38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478–80.) The letter informed Plaintiff that the College had found that Plaintiff engaged in inappropriate conduct with students, including tickling, groin hits, inappropriate sexual comments, and excessive force. (ECF No. 18, PageID.437–38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478–80.) The College notified Plaintiff that it intended to pursue Plaintiff's termination because of the misconduct and scheduled a "*Loudermill* Hearing" for February 13, 2020. (ECF No. 18, PageID.437–38; ECF No. 21,

PageID.634; ECF No. 18-2, PageID.478–80.) The college offered Plaintiff an opportunity to respond to its findings. (ECF No. 18, PageID.437–38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478–80.)

Plaintiff asked to reschedule the hearing, and it was reset for February 14, 2020. (ECF No. 18, PageID.438; ECF No. 21, PageID.634.) At the hearing, Williams informed Plaintiff of students alleging inappropriate behavior and provided Plaintiff a summary of the investigative findings. (ECF No. 18, PageID.438; ECF No. 21, PageID.635; ECF No. 12, PageID.269.) According to Plaintiff, he "explained that all of the training techniques he used were approved by the training manuals which were used at the academy." (ECF No. 12, PageID.269.) He had until February 17, 2020, to submit any additional evidence, but declined. (*Id.*, PageID.316.) Later on February 14, 2020, Defendant College terminated Plaintiff's employment with the Academy. (*Id.*, PageID.270.)

Plaintiff contacted the representative of his union, the Association of Adjunct Faculty of Macomb Community College ("Union"), asking that it initiate a grievance process challenging the College's decision to terminate his employment. (*Id.*, PageID.270.) The grievance process, which includes arbitration before a neutral tribunal, was included in the union's collective bargaining agreement ("CBA") with the College. (*Id.*, PageID.307.) Employment with the College was to be terminated only for "just cause after charges, notice, and hearing" under the CBA. (*Id.* PageID.269; *Id.* PageID.302.) On February 28, 2020, the Union informed Plaintiff in writing that it would not initiate the grievance process on Plaintiff's behalf due to an "insufficient probability of success." (*Id.*, PageID.318.) Under the CBA, Plaintiff could not file a grievance on his own. (*Id.*, PageID.271; ECF No. 18, PageID.463.)

In the court's previous order granting in part Defendant College's motion to dismiss, the court held that although Plaintiff's union did not pursue his grievance, Plaintiff's procedural due process rights were not violated. (ECF No. 29, PageID.748–56.) All that was required was notice and an opportunity to be heard. Based on the allegations in Plaintiff's complaint, just such a process was established; his union's discretionary decision to not pursue the post-termination process had no bearing on his rights. (*Id.*, PageID.756.) Due process was satisfied. (*Id.*) The court found that if he thought he was entitled to actually appear at a post-termination hearing, he was required to bring a claim directly against his union. (*Id.*, PageID.754.)

Plaintiff claims Defendant Bourgeois, as Executive Director of MCOLES, was required to provide him with a hearing to satisfy due process. (ECF No. 12, PageID. 272–73.) Plaintiff also alleges Defendant Rosa defamed him in the Investigative Summary that was given to Macksoud. (*Id.*, PageID. 279–80.) Defendants now move to dismiss for failure to state a claim upon which relief can be granted.

## II.  STANDARD

Under Rule 12(b)(6), a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing motions under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### III. DISCUSSION

### A.  Procedural Due Process Claim Against Defendant Bourgeois (Count II)

Under the Fourteenth Amendment's Due Process Clause, governments must "provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). While notice and an opportunity to be heard are the cornerstone of the Due Process Clause, due process is a "flexible" doctrine that "calls for such procedural protections as the particular situation demands." *Unan v. Lyon*, 853 F.3d 279, 291 (6th Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). In reviewing due

process claims, courts employ a two-step process. First, courts determine "whether a protected property interest exists." *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 565 (6th Cir. 2004). Second, courts decide "what procedures are required to protect that interest" in the particular situation *Id.*

As to the first step, examining the existence of a protected property interest, courts have repeatedly made clear that an individual must demonstrate a "legitimate claim of entitlement" to the interest in question, as opposed to an insufficient "unilateral expectation" or "abstract need." *See Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972))). A legitimate claim of entitlement may arise from "a state statute, a formal contract, or a contract implied from the circumstances." *Singfield*, 389 F.3d at 565. Where a contract or CBA provides that a public employee may not be discharged without just cause, the agreement "vests . . . the necessary property interest in continued employment." *See id.* at 566. *But see Roth*, 408 U.S. at 578 (finding only an "abstract concern in being rehired" where university professor's appointment was for a year term and did not mention rehiring and where no statute or university policy promised re-employment); *Crosby*, 863 F.3d at 554–55 (holding tenured university professor had no protected property interest where there was no statute, contract, or university policy that impliedly or expressly "guarantee[d] that he would not be removed from the position except for cause").

As to the second step, the Supreme Court established a framework for procedural due process challenges when a government body terminates an individual's public employment; the framework balances "the private interests in retaining

8

employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43 (1985). Under *Loudermill*, prior to termination, a public employee is entitled to only "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," provided that the employer provides an opportunity for a complete evidentiary hearing post-termination. *Id.* at 546. The purpose is not to "definitively resolve the propriety" of any termination, but merely to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46.

In ruling on Defendants' previous motion to dismiss, the court assumed that a protected property interest existed under the CBA. (ECF No. 29, PageID.748.) The court found that the government provided Plaintiff with sufficient notice and an opportunity to be heard; the requirements of *Loudermill* were satisfied based on the pleadings. (*Id.*, PageID.756.) Therefore, the court found Plaintiff's rights under the Due Process Clause were not violated. (*Id.*) The fact that Plaintiff's union refused to pursue a post-termination remedy on behalf of Plaintiff had no effect on his due process rights, even if the union was the exclusive method of challenging his termination. (*Id.*, PageID.751–56.) Due process requires only "the *opportunity* for a post-deprivation hearing before a neutral decisionmaker," not necessarily the use of the procedure. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 623 (6th Cir. 2013) (emphasis in original) (quoting *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004)). Because Plaintiff failed to

allege a violation of his due process rights, the court granted the motion to dismiss. (*Id.*, PageID.756.)

Now the thrust of Plaintiff's claim against Defendant Bourgeois is that he, through MCOLES, owed Plaintiff an "independent obligation to provide [Plaintiff] with an evidentiary hearing to protect his property interest in his continued employment from arbitrary and erroneous deprivation." (ECF No. 42, PageID.989; No. 12, PageID.272.) In other words, Plaintiff claims that even though the court previously found that *one state entity* did not deprive Plaintiff of his rights vested under the CBA, Defendant Bourgeois owed Plaintiff an additional, separate hearing in order to satisfy due process. Plaintiff makes this assertion because it was the MCOLES determination that he was "unfit in an MCOLES approved basic training academy and . . . prohibited from doing so in the future" that gave rise to his termination. (ECF No. 42, PageID.989.)

In light of the court's previous ruling, Plaintiff will have stated a claim against Defendant Bourgeois only if (1) each state actor responsible for a deprivation of a property right owes an individual a separate, independent evidentiary hearing to satisfy due process; or (2) MCOLES deprived Defendant Bourgeois a separate property right in being an MCOLES approved instructor, independent from the property right vested under the CBA.

### 1. No Separate, Independent Duty to Provide Hearing

Plaintiff requests that the court require Defendant Bourgeois to provide Plaintiff with an evidentiary hearing to disprove any allegations against him so he can return to work as a police academy instructor at the College. (ECF No. 12, PageID. 272–73.)

Plaintiff argues that under the Due Process Clause, any state actor—not just the entity who terminated the employee alone—even partially responsible for the deprivation of a property right in employment must provide an employee with a full evidentiary hearing. (ECF No. 42, PageID.989.) Plaintiff fails to cite any cases that call for such a requirement.[2] The court has already decided that, based on Plaintiff's allegations, any property right possessed by Plaintiff in continued public employment at the College was not deprived absent due process because the government did, in fact, afford Plaintiff the opportunity for a hearing. (ECF No. 29, PageID.748–56.) Thus, unless Plaintiff sufficiently alleges that MCOLES deprived some other property right belonging to Plaintiff, he will have failed to state a claim.

Furthermore, even assuming separate evidentiary hearings were required by all state entities responsible for a single deprivation, Plaintiff has failed to sufficiently allege Defendant Bourgeois was actually responsible for Plaintiff's termination; rather, termination was attributable only to the College, not any member of MCOLES. *See Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the *defendant is liable for the misconduct* alleged.") (emphasis added); *Twombly*, 550 U.S. at 557 (finding that if a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility" of entitlement to relief). For example, the investigation into Plaintiff's conduct did not begin with MCOLES

---

[2] In Plaintiff's sur-reply brief, Plaintiff relies on *Lugar v. Edmondson Oil Co., Inc.* to support its proposition that all parties partly responsible for a deprivation of a property right must provide a public employee with an evidentiary hearing. 457 U.S. 922 (1982). Nothing in *Lugar* supports that conclusion, as the case merely addresses private actors' conduct constituting state action.

and Defendant Bourgeois, but with the Academy and the Sheriff's Office. (ECF No. 12, PageID.265.) A May 2019 meeting in which the Academy and the Sheriff's Office and initially discussed allegations of sexual harassment in one of Plaintiff's classes sparked the investigation. (*Id.*) At that meeting, Sheriff's Office officials "indicated that they had initiated as [sic] investigation into the allegations" and indicated they would present any "evidence to the Macomb County prosecutor to have criminal charges assessed against Plaintiff." (*Id.*) They also stated that they planned on "forward[ing] the results of their investigation to the [Academy]." (*Id.*) At no point was MCOLES involved in that decision—the Academy and Sheriff's Office alone were looking to investigate and bring charges against Plaintiff.

In June, the Academy's Macksoud was personally contacted by the College's Denise Williams, to discuss the complaints against Plaintiff; she learned about the allegations from the Academy, not MCOLES. (*Id.*, PageID.266.) It was the College's decision to suspend Plaintiff for a short period of time while the College conducted a Title IX investigation. (*Id.*, PageID.266.) Additionally, MCOLES did not mandate Plaintiff's suspension; in Plaintiff's own words, MCOLES "sent an email to Macsoud [sic] advising him that, *at the request of* [*the College's*] *VP Williams*, Plaintiff was not to participate in the August, 2019, police academy training." (*Id.*, PageID.267.) (emphasis added). Although the College ultimately found no Title IX violations, it notified Plaintiff that he still may have violated "other college policies, procedures, or standards," and continued his suspension. (*Id.*, PageID.267, 285.) The decision to continue investigating Plaintiff for violation of college policies and to keep him suspended cannot reasonably be attributed to MCOLES based on Plaintiff's complaint.

Given that MCOLES' investigation of Plaintiff came two months after the College initially began its investigations, Plaintiff's complaint is clear that MCOLES did not actually play a role in Plaintiff's termination. (*Id.*, PageID.265–66.) Stated differently, Plaintiff would have been terminated regardless of MCOLES' investigation. This conclusion is amplified by the Letter of Termination sent to Plaintiff. (*Id.*, PageID.316.) The letter informed Plaintiff that his conduct was investigated by the College, promptly informs him of the College's own findings, and communicates that his conduct was "inappropriate and constitute[d] grounds for termination." (*Id.*, PageID.316.)  While MCOLES' investigation is noted in the letter, it is mentioned only after the conclusion that Plaintiff's conduct was grounds for termination. (*Id.*)

Accordingly, under a theory that a separate, independent hearing was owed to Plaintiff by MCOLES, Plaintiff has failed to state a claim against Defendant Bourgeois. Only if MCOLES owed Plaintiff some cognizable property right in being continuously approved as an instructor would Plaintiff sufficiently state a claim. For the reasons set out below, the court finds that Plaintiff does not possess a protected property interest.

### 2.  No Property Right in Being MCOLES Approved Instructor

As previously noted, it is well-established that a property interest exists only where there is a "legitimate claim of entitlement." *See Crosby*, 863 F.3d at 552 (6th Cir. 2017). A license to practice a particular profession, for example, constitutes a protected property interest. *See Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 413 (finding a private ambulance company possessed a "protected property interest in its license to operate ambulances" where statute provided eligibility requirements and revocation procedures). The Supreme Court has noted that "[o]nce licenses are issued . . . their

continued possession may become essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971). Procedural due process is therefore required before depriving an individual of such possession. *Id.*

On the other hand, no property interest exists "in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *See Med Corp.*, 296 F.3d at 409. In such a case, where a state actor has full discretion to deny a benefit, an individual can establish no more than a "unilateral expectation" to it. *See id.* at 410 (citing *Roth*, 408 U.S. at 577).

In *Sisay v. Smith*, the Sixth Circuit reiterated this principle. 310 F. App'x 832 (6th Cir. 2009). In *Sisay*, several taxicab companies located in Cleveland, Ohio, brought suit alleging that the government deprived them of their property rights in their cab licenses. Because the city had excluded the taxicab companies from using a particular airport's outbound queue, the plaintiffs claimed they were deprived of their right to accept jobs there. *Id.* at 837–38. Yet, the Sixth Circuit found there was no "policy, law, or mutually explicit understanding that both confer[red] the benefit and limit[ed] the discretion" of the government to rescind the benefit. *Id.* at 839. Rather, the court held the airport authority had "unfettered discretion to decide how and by whom" the airport queue could be used. *Id.* at 840. Specifically, the court looked to a local city ordinance, prohibiting all operation of "any vehicle for hire carrying passengers, *unless such operation has been approved by Airport Management and subject to such terms and conditions as may be prescribed.*" *Id.* at 835 (emphasis in original). The agency responsible for regulating the airport was subject to "no limits on [its] authority to either approve or restrict the operation of 'any vehicle for hire carrying passengers' at the airport." *Id.* at 840. Thus,

14

although the taxicab companies had been granted a license to operate under the city's code, they had no protected property interest in operating in the outbound queue of the airport due to the discretion given to Airport Management. *Id.* at 841–43.

Plaintiff, in arguing he sufficiently stated a claim, relies heavily on *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144 (10th Cir. 2001). In *Stidham*, a certified peace officer in Utah brought suit against the Peace Officer Standards and Training Division (POST), the state agency responsible for regulating certification of peace officers in Utah. *Id.* at 1148. As required by POST's regulations, the plaintiff completed all training, examinations, and procedures necessary to become a licensed peace officer. *Id.* The Tenth Circuit found that because POST's certification of the plaintiff was both "required and enable[d] him to work as a peace officer in the State of Utah," the plaintiff in *Stidham* had a protected property right in his peace officer license. *Id.*

The Sixth Circuit, as Plaintiff points out, has favorably cited *Stidham*. *See Med Corp., 296 F.3d at 411–12. In *Med Corp.*, a private ambulance company sued the city of Lima, Ohio, for violating its due process rights after the city suspended the company from receiving any 911 calls for the city for one week. *Id.* at 406. The suspension came after complaints about the company's slow response times and failure to locate certain addresses. *Id.* The company alleged it had a protected property interest in receiving 911 calls from the city's dispatch center and that the city's decision to suspend the company constituted a deprivation without due process. *Id.* at 409. The Sixth Circuit held there was no protected property interest in receiving 911 calls from the city's dispatch center. *Id.* at 410–11. The court noted the ambulance company failed to point to "some policy,

law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit." *Id.* at 410. The court further explained the "existence of a policy—written or otherwise—is not enough to create a property interest"; rather, the terms must "constrain the discretion of the official to suspend the benefit." *Id.* at 410. Thus, in the absence of any "written policy or legislative enactment" establishing a procedure for maintenance of the city's 911 dispatch list, or anything limiting the city's discretion to manage which companies were approved to take calls, the company lacked a protected property interest.[3] *Id.*

In the present case, Plaintiff's complaint fails to state a claim against Defendant Bourgeois because he did not have a protected property interest. (ECF No. 12.) Plaintiff points to no statute, rule, or mutual understanding between Plaintiff and MCOLES that warrants a finding that he had a protected property interest in continuously being an approved MCOLES instructor. While Plaintiff likens his situation to the peace officer's in *Stidham*, the two cases differ in a fundamental way. In *Stidham*, POST was responsible for the licensing of peace officers; however, in Plaintiff's case, MCOLES does *not* license instructors, the position in which Plaintiff asserts he has a property interest. *See* Mich. Comp. Laws §§ 28.609–609(e) (providing for licensure requirements of law enforcement officers, sheriffs, tribal law enforcement officers, arson investigators, and

---

[3] Plaintiff's response relies heavily on the *Med Corp.* opinion, but he depends on the portion of the Sixth Circuit's opinion analyzing "effective revocation" of the ambulance company's ambulance license. *See Med Corp.*, 296 F.3d at 411–13. Under this doctrine, if state action "would completely destroy" the value of a license, the state commits an "effective revocation" of the license, and due process protections must be afforded. *Id.* at 413. However, as further explained, Plaintiff has failed to allege that there was a protected property interest that could be "effectively revoked" in the first place. (ECF No. 42.)

private college security officers). And, crucially, Plaintiff has not alleged he is an employee of MCOLES with any kind of termination rights under an employment agreement.

Under the MCOLES Act, MCOLES is directed to regulate the licensing of law enforcement officers, sheriffs, tribal law enforcement officers, fire arson investigators, and private college security officers. *Id.* At no point does the statute lay out specific standards, requirements, or procedures for any type of licensing of law enforcement *instructors*; hence, there was nothing to improperly revoke. *See* Mich. Comp. Laws § 28.601, *et seq*. But Plaintiff argues that any investigations conducted under the MCOLES Act require a hearing. *See* Mich. Comp. Laws § 28.610. However, the plain language of the statute is unequivocally permissive: "In conducting an investigation, the commission *may* hold hearings, administer oaths, issue subpoenas, and order testimony to be taken at a hearing or by deposition." *Id.* (emphasis added). The provision merely empowers MCOLES to conduct a hearing if the agency deems it necessary to do so—it clearly does not guarantee any person subject to an investigation the right to a hearing. *See, e.g.*, *Old Life Ins. Co. of America v. Garcia*, 411 F.3d 605, 614–15 (finding that the word "may" is clearly and unambiguously permissive, unless there is "reason to expand the context" or where "sense, purpose or policy" mandates reading it as obligatory).

In fact, MCOLES appears to have great discretion to investigate and approve or disapprove instructors.[4] The MCOLES Act states that MCOLES "*may* promulgate rules"

---

[4] Much of Plaintiff's complaint and response brief argue that Defendant Rosa did not have authority to investigate any complaints against Plaintiff in the first place. This is not

with respect to various topics. Mich. Comp. Laws § 28.611 (emphasis added).[5] In particular, MCOLES has discretion to create rules for "[t]he establishment and approval of agency basic law enforcement training academies," and, significantly, "minimum qualifications for instructors for approved agency basic law enforcement training academies." *Id.* The MCOLES Act does not provide any guidance or requirements as to how MCOLES must approve of instructors in its academies. Nor has MCOLES promulgated any regulations that guarantee a license or certificate for instructors who meet particular minimum requirements. In fact, "license" according to MCOLES' own regulations means "the numbered certificate issued by the commission to a person who has received certification as a *law enforcement officer* under the act, as provided in MCL 28.602." (emphasis added). Mich. Admin. Code r. 28.14102. Under Mich. Comp. Laws § 28.602, the definition of "license," "licensing standards," and "licensure," all refer specifically to the procedures required to become a law enforcement officer. Thus, Plaintiff's case is distinct from *Stidham* in that there was no "license," as defined by Michigan's pertinent laws and regulations, issued by the state.

---

true, as Mich. Comp. Laws § 28.610 indisputably gives the commission the power to "investigate alleged violations" of the MCOLES Act and MCOLES rules. Further, Rule 28.14211 requires MCOLES to create a policy and procedural manual to carry out all MCOLES duties. And Rosa refers to this manual in his Investigative Summary. (ECF No. 36-1, PageID.888.) As such, the administrative rules and subsequently created MCOLES manual are "central to the plaintiff's claim" and must be considered. *Greenberg*, 177 F.3d at 514.

[5] In this way, Plaintiff's case strays even further than *Stidham* because the enabling statute in *Stidham* used language *mandating* POST to create rules regarding certification of peace officers; the discretionary language in the MCOLES Act makes Plaintiff's alleged property interest in being an MCOLES instructor even more tenuous. *See* Utah Code Ann. § 53-6-105.

Furthermore, under MCOLES' own regulations, MCOLES is required to "prepare and publish a policies and procedures manual which is consistent with the act and these rules and which shall govern the implementation and administration of the programs described in these rules."[6] Mich. Admin. Code r. 28.14211. MCOLES complied with this mandate, and as part of its manual, it created policies regarding instructors. Under Chapter 3, Unit 2, titled "Instructor Responsibilities and Qualifications," an instructor must have "a minimum of one (1) year job experience in the field of law enforcement or the relevant professional training, demonstrable skills and experience in the subject matter to which the instructor is assigned." But this alone does not grant any protectable property right. *See, e.g., Med Corp.*, 296 F.3d at 410 (noting that "written policies governing eligibility for inclusion" on particular jobs does not create a property interest where there is full discretion to remove the person from such jobs).

Moreover, as in *Med Corp.*, it appears that the "state's decision to award or withhold the benefit is wholly discretionary." 296 F.3d at 410. Section 3.2.05 of the MCOLES manual provides that an MCOLES training director will evaluate all instructors based on various criteria including, *inter alia*, "periodic observations" and "specific issues as they arise." Indeed, merely the "[f]ailure to perform satisfactorily may result in the revocation of instructor status by MCOLES" according to Section 3.2.05. "Satisfactorily" is not defined in the manual; it implies subjectivity. Thus, with no agreement or policy that promises Plaintiff a right to his role as an instructor, MCOLES effectively had "unfettered discretion to decide" who was approved as an instructor at

---

[6] Rosa made reference to this manual in his Investigative Summary. (ECF No. 36-1, PageID.888.)

police academies. *See Sisay*, 310 F. App'x at 840. *See also Roth*, 408 U.S. at 578 (finding only an "abstract concern in being rehired" in absence of agreement or statute promising rehiring); *Crosby*, 863 F.3d at 554–55 (rejecting a tenured professor's claim of a protected property interest in employment where no policy or agreement "guarantee[d] that he would not be removed from the position except for cause"). As in *Sisay,* there are effectively "no limits on [its] authority to either approve or restrict" who may be an MCOLES approved instructor. 310 F. App'x at 840.

Plaintiff is not an MCOLES employee and lacked any type of agreement with MCOLES promising him he would be approved as an instructor. At all relevant times, he was "employed by Defendant Macomb Community College as an adjunct instructor with the Macomb County Police Academy . . . which is administered by Macomb Community College." (ECF No. 12, PageID.263.) Additionally, the statutes, rules, and policies governing his status as an approved instructor are wholly discretionary.[7] Plaintiff has failed to direct the court to any employment relationship, mutual understanding, contract, policy, or statute that would otherwise give rise to a "legitimate claim of entitlement" in being approved as an MCOLES instructor. He has alleged a mere unilateral expectation or abstract need in the "opportunity to teach" at MCOLES approved academies. (ECF No. 12, PageID.272.) Therefore, the court will dismiss

---

[7] The MCOLES Act requires evidentiary hearings only for the revocation of a law enforcement officer license—it is silent on the issue of MCOLES approved instructors. *See* Mich. Comp. Laws § 28.609. To any extent there is any suggestion that Plaintiff's law enforcement license is being effectively revoked, note that his license had already lapsed: he has been retired since 2012. *See id.*

Plaintiff's procedural due process claim (Count II) against Defendant Bourgeois. (*Id.*, PageID.272–73.)

## B.  Libel Claim Against Defendant Rosa (Count IX)

Under Michigan law, a claimant must prove the following elements to establish a *prima facie* case of defamation:

> (1) a false and defamatory statement concerning the plaintiff, (2) an *unprivileged* communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se ) or the existence of special harm caused by publication [defamation per quod].

*Smith v. Anonymous Joint Enter.*, 487 Mich. 102, 793 N.W.2d 533, 540 (2010) (emphasis added) (citing *Mitan v. Campbell*, 474 Mich. 21, 706 N.W.2d 420, 421 (Mich. 2005)). Defendant argues this claim should be dismissed under Rule 12(b)(6) because it fails to allege an essential element of the claim; specifically, Defendant argues the communication at issue, the Investigative Summary, was qualifiedly privileged.[8]

In Michigan, the general elements to establish a qualified privilege are "(1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." *Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 15, 483 N.W.2d 629, 636 (1992). The question of whether a privilege exists is a question of law for the court. *Id.* (citing *Lawrence v. Fox*, 357 Mich. 134, 139–140, 97 N.W.2d 719 (1959)).  A privilege's

---

[8] Defendant also argued that the statements were not provable as false and that Rosa was immune under Michigan's Government Torts Liability Act. The court finds it unnecessary to address these arguments because it is clear Rosa's communication was privileged.

existence and whether it has been abused can be properly decided on a motion to dismiss. *See, e.g.*, *Elias v. Federal Home Loan Mortg. Corp.*, 581 F. App'x 461, 467–68 (6th Cir. 2014) (affirming district court's dismissal for failure to state a claim where complaint supported inference that qualified privilege existed and insufficiently supported a finding of malice).

A qualified privilege to defame exists for all communications made upon matters in which "the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty." *Tumbarella v. Kroger Co.*, 85 Mich. App. 482, 493, 271 N.W.2d 284, 289 (1978) (quoting *Bacon v. Michigan Cent. R. Co.*, 66 Mich. 166, 170, 33 N.W. 181, 182 (1887)). The privilege is applicable where "the occasion casts upon the defendant a duty, or right, to communicate to another in regard to some matter of special concern to one or both or to others for the protection of society, or some interest he represents." *Bolton v. Walker*, 197 Mich. 699, 706, 164 N.W. 420, 423 (1917). In Michigan, such privilege exists for government actors against liability for defamation, so long as they are acting in the scope of their employment. *See Parks v. Johnson*, 84 Mich. App. 162, 168, 269 N.W.2d 514, 517 (1978) ("Since [the defendant] was acting in her official capacity, she does have a qualified privilege, as do all public servants acting within the scope of their employment."); *Frohriep v. Flanagan*, 278 Mich. App. 665, 681, 754 N.W.2d 912, 923 (2008) ("All government employees have a qualified privilege when acting within the scope of their employment.").

In this case, Plaintiff's complaint and incorporated documents make it clear a qualified privilege exists; specifically, Defendant Rosa was a government actor within the scope of his duties as an MCOLES manager. (ECF No. 12, PageID.264, 267.) He

was empowered to conduct an investigation under MCOLES Administrative Rule 28.14602 to investigate violations of the MCOLES Act, MCOLES rules, or internal policies and procedures. Creating and communicating findings of his investigations to a proper person is necessarily within the scope of this duty.

Even without a finding that Defendant Rosa was a government actor, the shared-interests privilege was plainly present, based on the complaint. *See Merritt v. Detroit Mem'l Hosp.*, 81 Mich. App. 279, 284, 265 N.W.2d 124, 126 (1978) ("In general, a qualified privilege is recognized where the public interest in activities which presuppose frank communication on certain matters between persons standing in particular relationships to each other outweighs the damage to individuals of good faith but defamatory utterances relevant to the interests of those involved."). His communication to a training director promotes important public policies, the furtherance of which Defendant Rosa, Macksoud, and society at large are interested in—ensuring police officers are being effectively trained by the appropriate instructors, as well as ensuring safety and legitimacy of police academies. The training director of a police academy is undoubtedly a "proper party" for a qualified privilege, and the communication was made within the scope of Defendant Rosa's duties. The primary issue, then, is whether Plaintiff has sufficiently pleaded this communication was unprivileged by being made with actual malice.[9]

---

[9] At the outset, Defendant argues that "[g]eneral allegations of malice are insufficient to establish a genuine issue of material fact." (ECF No. 36 PageID.876.) This is not Plaintiff's burden at this stage. Rather, Plaintiff must have plausibly alleged malice to survive a motion to dismiss. *See Hearn v. Cty. of Wayne*, No. 11-15221, 2012 WL 831502, at *3 (E.D. Mich. Mar. 12, 2012) ("The defendant misstates the plaintiff's

Once a court determines a qualified privilege exists, a plaintiff may overcome it "only by showing that the statement was made with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth." *Prysak*, 193 Mich. App. 1 at 15, 483 N.W.2d at 636. The "reckless disregard" standard "is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published." *Grebner v. Runyon*, 132 Mich. App. 327, 333, 347 N.W.2d 741, 744 (1984). Statements made with "preconceived objectives or insufficient investigation," while perhaps negligent in some circumstances, are not made with actual malice. *Id.* Some Michigan cases also define malice as "bad faith." *See, e.g.*, *Hall v. Pizza Hut of America, Inc.*, 153 Mich. App. 609, 620, 396 N.W.2d 809, 814 (1986).

In this case, Plaintiff's complaint fails to sufficiently give rise to any support of an inference of malice by Defendant Rosa. The heart of Plaintiff's complaint is that, because Defendant Rosa made this statement without an evidentiary hearing to challenge any allegations against him, it constituted malice. (ECF No. 12, PageID.279) In effect, Plaintiff merges his procedural due process claim with his libel claim. A failure to conduct a hearing to investigate does not constitute reckless disregard for a statement's falsity, especially given the court's finding that Plaintiff was not entitled to a hearing. In any event, an individual's claim that they should have had a hearing does not constitute a sufficient allegation of malice. *See Smith v. Anonymous Joint*

---

burden at the motion to dismiss stage. The plaintiff need not demonstrate, at least for now, that a genuine issue of material fact exists as to the defendant's alleged malice.").

*Enterprise*, 487 Mich. 102, 117, 793 N.W.2d 533, 542 (2010) ("[I]t is well settled that the failure to investigate the accuracy of a communication before publishing it, even when a reasonably prudent person may have done so, is not sufficient to establish that the defendant acted with reckless disregard for the truth."); *Grebner*, 132 Mich. App. at 333, 347 N.W.2d at 744 ("[I]nsufficient investigation, while perhaps negligent in some circumstances, does not constitute actual malice.") This is true even if Plaintiff claims they are based on "hearsay allegations." *See Grebner*, 132 Mich. App. at 333, 347 N.W.2d at 744.

Plaintiff further claims that Defendant Rosa's failure to review the Title IX investigation results, past evaluations, and an affidavit of Plaintiff explaining the reasons for certain police tactics all give rise to an inference of actual malice. But Plaintiff's attempt to argue that Defendant Rosa deliberately ignored the truth is futile, because the Investigative Summary itself belies any support for such an argument.[10] The Investigative Summary details Defendant Rosa's full investigation into the allegations against Plaintiff, and Plaintiff does not appear to dispute anywhere in the complaint that Defendant Rosa *conducted a full investigation* into the matters. (ECF No. 36-1, PageID. 888.) At no point in his complaint does Plaintiff contest, as Defendant Rosa states in the Investigation Summary, that Defendant Rosa "factored in the potential mitigating circumstances . . . as well as his previously recognized law enforcement expertise and long 'track record' as an instructor.'" (*Id.*) Plaintiff failed to contest the fact that Rosa

---

[10] Plaintiff specifically refers to Defendant Rosa's Investigative Summary in his complaint. In determining a motion to dismiss for failure to state a claim, a court may consider a document incorporated into the complaint, or "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg*, 177 F.3d at 514.

actually conducted extensive interviews with several cadets and other personnel; without such an allegation, Plaintiff's complaint falls far short of plausibly pleading malice. (*Id.*)

Furthermore, even if malice were defined as "bad faith," Plaintiff's complaint would still fail. As opposed to Defendant Darga, with whom there was a history of some alleged hostility, Plaintiff does not allege that Defendant Rosa had any type of ulterior motive. (ECF No. 12, PageID.265.) In fact, the complaint demonstrates he sent the Investigative Summary *only* to the training director for review, and even refused to send the report to Defendant Darga when it was requested by her. (ECF No. 12, PageID.268.) Plaintiff does not allege Defendant Rosa disseminated the information improperly or shared it with any improper party in bad faith. While not dispositive, Defendant Rosa even cited his authority to conduct the investigation, demonstrating that this was in good faith within the scope of his duties. (ECF No. 36-1, PageID.885.)

Given the details of Rosa's investigation and the bare-bones factual allegations of Plaintiff of a reckless disregard for falsity, actual malice is not plausible. Taking the complaint and Investigative Summary in totality, Plaintiff has simply failed to plead that there were serious doubts as to the truth before publication. *See, e.g., Ryniewicz v. Clarivate Analytics*, No. 18-11314, 2019 WL 316536, at *5 (E.D. Mich. Jan. 24, 2019), *aff'd*, 803 F. App'x 858 (6th Cir. 2020) (dismissing a claim under Rule 12(b)(6) where court determined qualified privilege existed and where the plaintiff-employee did not sufficiently describe how actual malice existed after an internal investigation). Consequently, the court will dismiss Count IX for libel against Defendant Rosa.

## IV. CONCLUSION

Taking all allegations in his complaint as true, Plaintiff has not stated a claim under the Due Process Clause against Defendant Bourgeois, nor has he sufficiently stated a claim against Defendant Rosa for libel.

Three counts of Plaintiff's complaint now remain: two substantive due process claims against Defendants Darga and the Sheriff's Office (Counts IV and V), and a libel claim against Defendant Darga (Count XII). Accordingly,

IT IS ORDERED that Defendant Bourgeois and Defendant Rosa's Motion to Dismiss Plaintiff's First Amended Complaint is GRANTED. (ECF No. 18) Both the procedural due process claim (Count II) and the libel claim (Count IX) are DISMISSED WITH PREJUDICE.


s/Robert H. Cleland                              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  September 1, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 1, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                                   /
Case Manager and Deputy Clerk
(810) 292-6522


S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-13175.BOWLES.MotiontoDismiss.MAZ.2.RHC.docx