**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

GLENN BOWLES,

          Plaintiff,

v.                                      Case No. 20-13175

MACOMB COMMUNITY COLLEGE, _et al._,

          Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO CORRECT
ERRONEOUS STATEMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO
FILE A SECOND AMENDED COMPLAINT**

Plaintiff Glenn Bowles brings this action under 42 U.S.C. § 1983, alleging due

process violations and pendent state law claims. Plaintiff filed his First Amended

Complaint on January 28, 2021. (ECF No. 12.) Since that time, the court has granted

motions to dismiss brought by various Defendants, and three counts of his complaint

remain: two substantive due process claims brought under 42 U.S.C. § 1983 (Counts IV

and V), and a state law libel claim against Macomb County Sheriff's Office Undersheriff

Elizabeth Darga (Count XII).

Before the court is Plaintiff's Motion for leave to File a Second Amended

Complaint.[1] (ECF No. 49.) He seeks to add a due process claim alleging that either

Defendant Macomb Community College ("College") or Michigan Commission on Law

---

[1]     Plaintiff also brings a motion to correct "an erroneous statement" in his
supplemental brief. (ECF No. 59.) The court grants the motion, although the correction
does not impact the court's holding.

Enforcement Standards[2] ("MCOLES") violated his liberty interest by providing a news outlet with an MCOLES report that summarized an investigation into Plaintiff's conduct as a police academy instructor. (*Id.*) The matter has been fully briefed, including two supplemental briefs, which provide context to the complaint's allegations regarding Plaintiff's request for a "name-clearing hearing." (ECF Nos. 49, 50, 52, 54, 55, 57, 58.) The court does not find oral argument to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will deny Plaintiffs' motion for leave to file a second amended complaint.

## I. BACKGROUND

The court will summarize the facts relevant to this motion, as the court has twice recited the full history of this case. (ECF Nos. 29, 46.)

Plaintiff was a law enforcement officer from 1989 until his retirement in 2012. (ECF No. 12, PageID.264.) While he was still serving as a law enforcement officer, Plaintiff was employed by the Macomb County Police Academy (the "Academy") as a defense tactics and firearms instructor from 2006 to 2019. (*Id.*) Defendant College, a public entity, administers the Academy. (*Id.*, PageID.263-64.)

On May 16, 2019, representatives from the Macomb County Sheriff's Office ("Sheriff's Office") met with the Academy's leadership and informed Academy personnel that a Sheriff's Office cadet filed a complaint against Plaintiff, alleging that Plaintiff inappropriately touched and harassed students during drills and exercises. (*Id.*, PageID.265.) At the meeting, the Sheriff's Office noted that an investigation had been

---

[2]    It is unclear whether Plaintiff seeks to bring the claim against MCOLES or MCOLES' Executive Director Timothy Bourgeois, but it is immaterial for purposes of this motion.

initiated and any wrongdoing would give rise to potential charges with the Macomb County prosecutor. (*Id.*) It was indicated that the Sheriff's Office would forward the results of the investigation only to the Academy. (*Id.*, PageID.265-66.) Plaintiff alleges that, due to a long-running animus, Defendant Darga was closely involved in the 2019 investigation of Plaintiff's conduct toward cadets and manufactured false claims to destroy Plaintiff's relationship with both the College and the Academy. (*Id.*, PageID.265-70.)

On June 3, 2019, the College's Vice President of Human Resources Denise Williams contacted the Academy's Training Director Raymond Macksoud to discuss a complaint she received from the Sheriff's Office. (*Id.*, PageID.266.) The next day, the College contacted Macksoud telling him that Plaintiff was suspended from instructing at the College until further notice. (*Id.*) A Title IX investigation was initiated on June 5, 2019. (*Id.*) As part of the investigation, the College's investigators informed Macksoud that Defendant Darga had accused Plaintiff of striking a cadet "in the groin area which caused the cadet to drop a firearm that accidently discharged." (*Id.*) According to Plaintiff, Defendant Darga fabricated the accusation. (*Id.*, PageID.266-67.)

The College requested that Plaintiff not participate in the August 2019 police training, and the Academy was notified of the request by MCOLES manager Danny Rosa on July 8, 2019. (*Id.*, PageID.267.)

On December 23, 2019, Rosa sent an Investigative Summary and MCOLES Conclusion ("Investigative Summary") to the Academy; the Investigative Summary analyzed the evidence of the investigation. (ECF No. 36-1, PageID.888.) The report

concluded that Plaintiff was unfit to conduct training of police cadets, and it prohibited Plaintiff from participating in future MCOLES approved basic training programs. (*Id.*)

On February 12, 2020, the College sent Plaintiff an email with a letter attachment. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.) The letter informed Plaintiff that the College had found that Plaintiff engaged in inappropriate conduct with students, including tickling, groin hits, inappropriate sexual comments, and excessive force. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.) The College notified Plaintiff that it intended to pursue Plaintiff's termination because of the misconduct and scheduled a "*Loudermill* Hearing" for February 13, 2020. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.) The College offered Plaintiff an opportunity to respond to its findings. (ECF No. 18, PageID.437-38; ECF No. 21, PageID.634; ECF No. 18-2, PageID.478-80.)

At the hearing, Plaintiff was informed that there were students alleging inappropriate behavior, and the College provided Plaintiff a summary of the investigation. (ECF No. 18, PageID.438; ECF No. 21, PageID.635; ECF No. 12, PageID.269.) According to Plaintiff, he "explained that all of the training techniques he used were approved by the training manuals which were used at the academy" and "denied the generalized allegations which were leveled against him." (ECF No. 12, PageID.269.) He had until February 17, 2020, to submit any additional evidence, but he declined to do so. (*Id.*, PageID.316.) Later, on February 14, 2020, the College terminated Plaintiff's employment. (*Id.*, PageID.270.)

On February 16, 2020, a local news service, Macomb Daily, published an article that discussed Plaintiff's termination and indicated that it had obtained the Investigative Summary. (ECF No. 49, PageID.1113.) The article outlined Plaintiff's investigation and discussed how recruits "found some actions by [Plaintiff] to be sexually inappropriate, including inappropriate touching, tickling and/or sexual or sexist comments." (*Id.*, PageID.1177.) Plaintiff contends that the report was supposed to be confidential, and the College or MCOLES is responsible for giving the Investigative Summary to the Macomb Daily. (*Id.*, PageID.1113.)

Plaintiff subsequently attempted to contest his termination by contacting his union and asking that it initiate a grievance on his behalf. (ECF No. 12, PageID.316.) On February 28, 2020, his union informed Plaintiff in writing that it would not initiate the grievance process on Plaintiff's behalf due to an "insufficient probability of success." (*Id.*, PageID.318.)

In the court's order on May 7, 2021, which granted in part Defendant College's motion to dismiss, the court held that although Plaintiff's union did not pursue his grievance, Plaintiff's procedural due process rights were not violated. (ECF No. 29, PageID.748-56.) All that was required was notice and an opportunity to be heard. Based on the allegations in Plaintiff's complaint, just such a process was established; his union's discretionary decision to not pursue the post-termination process had no bearing on his rights. (*Id.*, PageID.756.) Due process was satisfied because it was the opportunity and availability of recourse to a constitutionally sufficient administrative procedure—not the *use* of the procedure—to which Plaintiff was entitled. (*Id.*, PageID.754.) The court found that if he thought he was entitled to actually appear at a

5

post-termination hearing, he was required to bring a claim directly against his union. (*Id.*, PageID.754.) Following this order and the court's dismissal of multiple state law claims, the only remaining claims were a procedural due process claim against Defendant Bourgeois (Count II), two substantive due process claims against Defendants Darga and the Sheriff's Office (Counts IV and V), and two libel claims against Defendants Rosa and Darga (Counts IX and XII).

The court subsequently dismissed Plaintiff's due process claims against Defendant Bourgeois (Count II) and the libel claim Danny Rosa (Count IX) in its order dated September 1, 2021. (ECF No. 46.) As stated in that order, the only remaining claims in this action are "two substantive due process claims against Defendants Darga and the Sheriff's Office (Counts IV and V), and a libel claim against Defendant Darga (Count XII)." (*Id.*)

On September 10, 2021, Plaintiff sent a letter by certified mail to Defendant Bourgeois and Williams requesting that he be afforded a name-clearing hearing either by MCOLES or the College. (ECF No. 49, PageID.1115.) Shortly thereafter, Plaintiff filed the instant motion to amend his complaint, and Defendants' response indicated that the parties had been in contact regarding the requested name-clearing hearing.[3] The court held a status conference on the matter.

The College contends that Plaintiff was not entitled to a name-clearing hearing, but it gave him the opportunity anyway. (ECF No. 57, PageID.1316.) The College mailed notice to Plaintiff that it scheduled the hearing for October 1, 2021. (ECF No. 57,

---

[3]     Plaintiff's motion also requested a stay pending Defendant's responses to the request for a name-clearing hearing. (ECF No. 49, PageID.1099.)

PageID.1316.) Moreover, according to the College, "[n]otice of the public name-clearing hearing was published in two different places on the College's website, including its News page and its Calendar of Events." (*Id.*) Plaintiff indicated that he did not receive the letter until after October 1, and the parties agreed to reschedule the name-clearing hearing to October 29, 2021. (*Id.*, PageID.1316.) At the status conference, the parties discussed the scheduling and parameters of the name-clearing hearing; the court indicated it would wait to rule on Plaintiff's motion to amend until the parties had completed the hearing.

According to the parties' supplemental briefing,[4]  Plaintiff had four demands as to the parameters of the name-clearing hearing: (1) an agreed upon decisionmaker who was not affiliated with the College, (2) a court reporter, (3) the opportunity to present witnesses and evidence and if necessary obtain a continuance, and (4) the presence of legal counsel. (ECF No. 57, PageID.1317; ECF No. 57-4, PageID.1334.) The parties were in agreement as to all demands—including a minimum three hours for the hearing with the potential for an additional hour if needed—except for one. The parties disagreed as to the presence of a "neutral decisionmaker"; after the College offered a Title IX Coordinator to act as to moderate the hearing, Plaintiff's counsel insisted that she not preside "because it was a [Title IX] investigation that triggered" the case. (ECF No. 57-5, PageID.1336-37.) In response, the College offered a list of six different

---

[4]     Plaintiff's proposed complaint initially alleges that he had "not received a response to his requests for a name clearing hearing" from Defendants (ECF No. 49, PageID.1115), but the parties' supplemental briefing clarifies that College contacted him shortly after to schedule one because it had not yet received the mailed request. (ECF No. 57, PageID.1316.) Thus, the supplemental briefing and attached emails between the parties provide necessary context to the factual allegations in Plaintiff's complaint.

hearing moderators, including the College's general counsel, Dean of Health and Public Services, Director of Human Resources, Vice President of Student Services and Title IX Coordinator, Dean of Student Success, and Associate Dean of Student Success. (ECF No. 57-5, PageID.1336.) The College made clear that if Plaintiff declined any of these individuals, it would appoint one from the list and conduct the hearing on October 29. (*Id.*) For this reason, Plaintiff refused the College's offer for a name-clearing hearing and stated he would not be attending. (ECF No. 57-7, PageID.1341.) Plaintiff objected to the College's "unwillingness to provide a hearing which comports with [his] due process rights" and pointed to *Carter v. W. Reserve Psychiatric Habilitation*, 767 F.2d 270 (6th Cir. 1985) to identify the necessary parameters of the hearing. (*Id.*) He characterized the proposed hearing as one which was a "skeletal surrogate of the due process hearing to which he is entitled." (*Id.*, PageID.1342.)

## II. STANDARD

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend a pleading within twenty-one days of serving the pleading or, if a responsive pleading is required, within twenty-one days of the responsive pleading. Once twenty-one days have passed, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Consistent with the liberal pleading standards of federal court, Rule 15 directs the court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *see* 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1473 (3d ed.). Underlying the rule is the principle that "cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182 (1962).

### III. DISCUSSION

Plaintiff seeks to add a claim for the deprivation of a liberty interest without due process against the College and MCOLES. (ECF No. 49, PageID.1099.) The proposed amendment alleges that the government has, by giving the Investigative Summary to the Macomb Daily and thus making it public, "infringed on Plaintiff's liberty interest protected under the Fourteenth Amendment and have violated the 'stigma plus' test." (*Id.*, PageID.1138.) Plaintiff asserts that he "has requested a name clearing hearing be provided to him." (*Id.*) According to his proposed complaint, Plaintiff seeks an injunction "requiring [the College] and Director Bourgeois to provide Plaintiff with a name clearing hearing, and that pending the name clearing hearings being provided," lift the sanction prohibiting him from participating in future MCOLES approved training programs, at least until "the results of the name clearing hearings confirm the findings of the original Investigative Summary."[5] (*Id.*)

---

[5]     To the extent that Plaintiff again attempts to argue *more than one* state entity must provide him with a name-clearing hearing for publication of the Investigative Summary, he has once again provided no authority to support his position. The court already addressed and rejected Plaintiff's similar argument in its September 1, 2021 order. (ECF No. 46, PageID.1065-66, n.2.) *Cf. Welling v. Owens State Cmty. Coll.*, 535 F. Supp. 2d 886, 891 (N.D. Ohio 2008) (finding that the court "will not sacrifice efficiency, economy, and fairness and double up on the process due" to the plaintiff, where the plaintiff requested a name-clearing hearing even though he had received a full hearing before termination). The court is not convinced that a singular deprivation of

Both the College and Defendant Bourgeois oppose the second amendment of the complaint arguing that (1) Plaintiff's "purposeful delay" evinces bad faith and (2) the amendment would be futile. (ECF No. 50, PageID.1196; ECF No. 52, PageID.1254.) However, the court need not definitively determine whether there was a "purposeful delay" and "bad faith" in Plaintiff's amendment of the complaint.[6] The proposed amendment is obviously futile, and the court therefore will deny Plaintiff's motion to amend the complaint.

It is well-settled that district courts may deny as futile a motion for leave to amend a complaint if the proposed complaint could not withstand a motion to dismiss. *See Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993); *see also Neighborhood Dev. Corp v. Advisory Council on Historical Pres.*, 632 F.2d 21, 23 (6th Cir. 1980); *Rose v. Wayne Cty. Airport Auth.*, 210 F. Supp. 3d 870, 893 (E.D. Mich. 2016) ("If the district court concludes that the pleading as amended could not withstand a motion to dismiss, then the court may deny the motion to amend and save the parties

---

a property or liberty interest warrants "doubling up" the amount of process due. *See id.* Insofar as Plaintiff alleges either MCOLES or the College made the findings of the Investigative Summary public, a name-clearing hearing provided by either of these entities would satisfy due process.

[6]     To be sure, it is questionable why Plaintiff waited nineteen months from his termination and nine months from the beginning of this litigation to even request a name-clearing hearing. Similarly, Plaintiff offers no explanation why he failed to seek leave until after two motions to dismiss and a motion for reconsideration were fully litigated and after the College, MCOLES, and Bourgeois were dismissed from the case. However, insofar as Defendants rely solely on Plaintiff's delay, delay alone is usually not sufficient to deny leave to amend, and Defendants have not articulated any specific prejudice that they would suffer by granting leave. *See Bagsby v. Gehres*, 225 F. App'x 337, 356 (6th Cir. 2007). The parties have not yet begun formal discovery, and the court therefore does not perceive a risk of significant prejudice.

and the court the expense of having to confront a claim doomed to failure from its outset.").

Under Rule 12(b)(6), a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing motions under Rule 12(b)(6), the complaint is viewed in the light most favorable to the non-moving party, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's

claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). In this regard, a plaintiff "cannot avoid dismissal of a legally deficient claim by failing to attach a dispositive document to the complaint." *Allied Mech. Servs., Inc. v. Loc. 337 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus.*, 221 F.3d 1333, at *2 (6th Cir. 2000).

The parties dispute, *inter alia*, whether Plaintiff is entitled to a name-clearing hearing in the first place. In other words, Defendants argue that Plaintiff would be incapable of establishing the five factors of a "stigma-plus" liberty interest claim, and therefore his claim would not be able to withstand a motion to dismiss. (ECF No. 50, PageID.1204-05; ECF No. 52, PageID.1264.) And while Plaintiff alleges that the act of giving the Investigative Summary to the Macomb Daily gives rise to his liberty interest claim, the College also argues that Plaintiff's amended claim is futile because he rejected a name-clearing hearing that comported with due process. (ECF No. 52, PageID.1269; ECF No. 57, PageID.1320.)

The Fourteenth Amendment's Due Process Clause forbids states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Among the protected liberty interests are a person's "reputation, good name, honor, and integrity," but defamation alone does not invoke due process concerns. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 584 (6th Cir. 2021); *Quinn v. Shirley*, 293 F.3d 315, 319 (6th Cir. 2002). "Some alteration of a right or status previously recognized by state law, such as employment, must accompany the damage to reputation to make out a due process violation." *Kaplan*, 10 F.4th at 584 (internal quotations omitted). A deprivation of a liberty interest must "be accompanied by notice

and an opportunity to be heard to refute any charges against that person." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972)). "[W]hen a 'nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.'" *Id.* (quoting *Roth*, 408 at 572).

As an initial matter, Plaintiff's allegations against Defendant Bourgeois falls short of making out a stigma-plus claim, in part because many of Plaintiff's arguments are foreclosed by the court's previous orders. Notably, Plaintiff's employment was terminated by the College, not MCOLES or Defendant Bourgeois. The court held that, according to Plaintiff's own allegations, the College terminated Plaintiff as the result of its own *independent* investigation, removing any doubt that the Investigative Summary was made in conjunction with Plaintiff's ultimate termination. (*See* ECF No. 46, PageID.1068 ("Plaintiff's complaint is clear that MCOLES did not actually play a role in Plaintiff's termination. Stated differently, Plaintiff would have been terminated regardless of MCOLES' investigation.").) Plaintiff's amended complaint essentially alleges that MCOLES defamed him, but past that, Defendant Bourgeois and MCOLES did not alter or remove "a right or status previously recognized and protected by state law." *Kaplan*, 10 F.4th at 584. In other words, the court can discern allegations of "stigma," but not a "plus." In this regard, the court has already held that "Plaintiff is not an MCOLES employee and lacked any type of agreement with MCOLES promising him he would be approved as an instructor," nor did he have any "kind of termination rights under an employment agreement." (ECF No. 46, PageID.1072, 1075.) Plaintiff can establish only

an "abstract need in the opportunity to teach at MCOLES approved academies,"
especially given the unfettered discretion MCOLES has in approving instructors at its
academies; yet, Plaintiff is still free to continue teaching defense tactics, instructing
firearms classes, or working elsewhere in public employment, as the Investigative
Summary deemed him "unfit" to instruct only in an MCOLES approved police academy.
(*See* ECF No. 46, PageID.1074-75.) In short, Plaintiff points to no right or status
recognized by law that MCOLES or Defendant Bourgeois altered. *See Schirrick v. AU
Sable Valley Cmty. Auth.*, No. 04-10367, 2006 WL 373038, at *7 (E.D. Mich. Feb. 16,
2006) (Lawson, J.) (holding that plaintiff's liberty interest was not implicated because, in
part, "the defendant did not actually terminate her"); *Murtha v. Rossford Exempted Vill.
Sch.*, No. 21-3449, 2021 WL 4950238, at *5 (6th Cir. Oct. 25, 2021) ("Here, Murtha
suffered no change in legal status in conjunction with the alleged stigma . . . Any harm
to his reputation that may give rise to a claim of defamation is unaccompanied by the
requisite change in legal status that would bring it under the protections of the
Fourteenth Amendment."). Accordingly, the court's opinion will address Plaintiff's
amended complaint primarily as it pertains to the College, as the court's previous
holdings and Plaintiff's complaint demonstrate that Defendant Bourgeois and MCOLES
could not have done anything that caused the "requisite change in legal status" that
gives rise to a Fourteenth Amendment claim.

The Sixth Circuit has held that a plaintiff must plead five elements to properly
state a claim for deprivation of a liberty interest in the employment context, and for the
purposes of this motion, the court will assume that these requirements have been met
as against the College:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination[7] from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty, or malfeasance. Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Kaplan*, 10 F.4th at 584 (quoting *Quinn*, 293 F.3d at 319).

Only when a plaintiff properly pleads these five elements is he entitled to a name-clearing hearing upon request. *Id.* Crucially, a plaintiff's failure to request a name-clearing hearing is fatal to an allegation that the individual was deprived of a liberty interest. *Id.* As the Sixth Circuit put succinctly, "[i]t is the denial of a requested name-clearing hearing that deprives the plaintiff of his liberty interest without due process." *Id.* (citing *Quinn*, 293 F.3d at 320).

Here, whether Plaintiff was denied a proper name-clearing hearing is central to the issue of the amended complaint's futility. There is no dispute that Plaintiff requested a name-clearing hearing before filing the proposed complaint.[8] Nor is there a dispute

---

[7]    Again, Plaintiff cannot meet this element as it pertains to Defendant Bourgeois or MCOLES. The court has already held that "[a]t all relevant times, he was employed by Defendant Macomb Community College as an adjunct instructor with the Macomb County Police Academy . . . which is administered by Macomb Community College." (ECF No. 46, PageID.1075 (internal citations omitted).) Thus, although the MCOLES report deemed Plaintiff "unfit" to instruct an MCOLES approved academy and prohibited him from doing, the statements were not made "in conjunction with . . . termination from employment," particularly where it was not MCOLES' decision to terminate his employment from the College and the entities conducted independent investigations. *See Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 730 (E.D. Mich. 2021) (holding plaintiff was not entitled to a name-clearing hearing in part because "[t]he language in *Ludwig* limits a due process violation to 'termination'").

[8]    The court notes that although the amended complaint would supersede the original complaint, it is unclear whether Plaintiff was required to request a name-clearing hearing "*before filing the instant action.*" *Quinn*, 293 F.3d at 325 (emphasis added); *Brown*, 214 F.3d at 723 (granting summary judgment because defendants did not

that one was offered by his former employer, the College. Rather, the parties' sole disagreement is whether the offered name-clearing hearing comported with due process.[9] The court has reviewed the parameters of the name-clearing hearing and holds that the College granted Plaintiff's request for a hearing and that its parameters were consistent with due process. Because Plaintiff was not denied a name-clearing hearing, Plaintiff's liberty interest claim would therefore not survive a motion to dismiss. *See Umfress v. City of Memphis*, No. 20-6115, 2021 WL 2828023, at *3 (6th Cir. July 7, 2021) ("Denial of a name-clearing hearing is the violation of procedural due process that creates a stigma-plus cause of action."); *Quinn*, 293 F.3d at 323-24 ("[A] plaintiff must request *and be denied* a name-clearing hearing in order to have been deprived of a liberty interest without due process.").

While the Sixth Circuit "has left it to the trial courts to determine formal procedural requirements" for a name-clearing hearing, there is a general consensus that the "purpose of a name-clearing hearing is not to challenge the decision to discharge or otherwise to discipline the employee." *Gunasekera v. Irwin*, 678 F. Supp. 2d 653, 662 (S.D. Ohio 2010). Rather, the "purpose of a name-clearing hearing is to afford the

---

"receive notice of the plaintiffs' desire for a name-clearing hearing prior to the initiation of this lawsuit").

[9]     Plaintiff also argues that he had a right to be informed "that he was entitled to request a name clearing hearing." (ECF No. 49, PageID.1120.) However, this claim fails; the Sixth Circuit has made it clear that "employers have no 'affirmative duty' to advise employees about their potential entitlement to a name-clearing hearing." *See Kaplan*, 10 F.4th at 584-85; *Quinn*, 293 F.3d at 323 ("In any event, this Court has never imposed an affirmative duty on an employer to apprize the employee of his right to a name-clearing hearing."); *accord Kohus v. Ohio State Highway Patrol*, No. 1:09-CV-658, 2011 WL 1234021, at *12 (S.D. Ohio Feb. 15, 2011), *report and recommendation adopted*, No. 1:09CV658, 2011 WL 1187836 (S.D. Ohio Mar. 29, 2011).

aggrieved employee an 'opportunity to be heard to refute the charges disseminated against him.'" *Quinn*, 293 F.3d at 321 (quoting *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir.1997). This hearing "need only provide an opportunity to clear one's name." *Id.*; *accord Feterle v. Chowdhury*, 148 F. App'x 524, 531 (6th Cir. 2005) ("The only real requirement for a name-clearing hearing is the opportunity to be heard; to address the charges against you.").

Plaintiff's complaint alleges that he requested a name-clearing hearing, and the College subsequently offered Plaintiff ample opportunity to refute the charges against him. The parties agreed to hold the name-clearing hearing in a large forum that was open to the public, and a court reporter was permitted to record the entire event so that Plaintiff could retain an accurate record of all material details. (ECF No. 57-3, PageID.1333, 1336.) Furthermore, Plaintiff was entitled to counsel that would represent him at the hearing and present a full case—with his own witnesses and evidence—for up to four hours. (*Id.*) This opportunity was clearly "tailored to afford the grievant an opportunity to clear his name commensurate with the deprivation," *Kaplan*, 10 F.4th at 585, and the Due Process Clause requires nothing more than this opportunity. *See, e.g.*, *Feterle*, 148 F. App'x at 531 (finding no violation of university teacher's due process rights where he was afforded five different opportunities to refute the charges against him, most of which held before employees of the university that terminated him). Plaintiff's position regarding the allegations against him is that "all of the training techniques he used were approved by the training manuals which were used at the academy," and that Defendant Darga fabricated stories about him as part of a long-standing animus against him. (ECF No. 49, PageID.1108-09; ECF No. 49,

PageID.1131.) Up to four hours of witness testimony and evidence in a public forum is more than sufficient for Plaintiff to tell his side of the story, and the College gave him that chance. Plaintiff requested a name-clearing hearing, and that request was granted. Plaintiff's unilateral refusal to appear at the hearing does not constitute a violation of his due process rights. His attempt to add a liberty interest claim is therefore futile.

Plaintiff's major gripe with the name-clearing hearing was that there was no "neutral decisionmaker" as there would be in a post-deprivation hearing for a property interest. *See, e.g.*, *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 623 (6th Cir. 2013). Plaintiff questions, "[w]hat use is a name clearing hearing if [the College] can simply rubber stamp its termination decision?" (ECF No. 58, PageID.1349.) Thus, Plaintiff's position stems from a belief that a proper name-clearing hearing should be adjudicative in nature and culminate in his reinstatement to his position as an instructor at the College.[10] But "[t]he point of a name-clearing hearing is not to argue over the reasons for termination. Rather, the point is to give the employee the opportunity to argue, 'You made a statement about me that is ruining my reputation, and that statement is not true.'" *Jennings v. Cty. of Monroe*, 630 F. App'x 547, 556 (6th Cir. 2015) (comparing the difference between the requirements of a *Loudermill* hearing and a name-clearing

---

[10]     Plaintiff apparently relies on language in *Roth*, stating that "[o]nce a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." (ECF No. 59, PageID.1354-55 (quoting *Roth*, 408 U.S. at 573 n.12.) But this does not mean there must be a "neutral decisionmaker"—as defined by Plaintiff—moderating the name-clearing hearing, particularly where even the Court in *Roth* contemplated that the "opportunity to refute the charge[s]" would be held "*before University officials.*" *Id.* at 573 (emphasis added). Thus, even if it were true that an employer was "obligated to rehire the terminated employee" following a name-clearing hearing, Plaintiff points to no case law requiring the moderator to be completely unaffiliated with the College. (ECF No. 59, PageID.1354.)

hearing). Even though "it is certainly possible a public employer may reconsider its decision following such a hearing, the Constitution does not require reconsideration." *O'Brien v. City of Saginaw*, No. 10-12700-BC, 2011 WL 3799649, at *4 (E.D. Mich. Aug. 26, 2011) (Ludington, J.) (quoting *Awrey v. Gilbertson*, No. 10–14242–BC, 2011 WL 2312175, at *4 (E.D. Mich. June 9, 2011). Here, Plaintiff advances his liberty interest claim based on his reputation, and Sixth Circuit precedent is clear that the central requirement is that a plaintiff has the opportunity to be heard and refute the charges against him—nothing more. *See Chilingirian*, 882 F.2d at 205 (finding that name-clearing hearing was adequate where city attorney who was terminated by the city council had only the opportunity to rebut charges at the hearing, despite the council's refusal to answer the employee's questions); *cf. Gregory v. Hunt*, 24 F.3d 781, 788-89 (6th Cir. 1994) (noting that name-clearing hearing was adequate despite absence of "unbiased" decisionmaker, where employee was allowed to speak at an informal hearing and respond in writing). The primary issue is whether there was a denial of a name-clearing hearing; only if there is a denial does any harm arise. *See Umfress*, 2021 WL 2828023, at *3 ("Denial of a name-clearing hearing is the violation of procedural due process that creates a stigma-plus cause of action—the reputational harm is just the injury that deprivation causes."). Plaintiff provides no Sixth Circuit case law standing for the proposition that a "neutral decisionmaker" is constitutionally required to moderate a name-clearing hearing in all circumstances.[11]

---

[11]    Notably, the College offered a list of *six* different hearing moderators, all of which were rejected by Plaintiff due to their status as an employee at the College. At least three of them—the Dean of Health and Public Services, Dean of Student Success, and Associate Dean of Student Success—in no way have been alleged to have *any*

Thus, "the lack of a neutral decision maker does not alter the fact that Plaintiff was offered a hearing," during which he and his counsel had hours to present evidence and witnesses to rebut any allegedly false allegations that may or may not have led to his termination from the College. *See O'Brien*, 2011 WL 3799649, at *4 (granting motion for summary judgment because lack of neutral decision maker at name-clearing hearing did not change the fact that it still allowed the plaintiff to present evidence and clear his name). In short, Plaintiff's failure to receive a hearing "in the manner contemplated by him" does not change the fact that he was offered "extended ample opportunity to clear his name." *Chilingirian*, 882 F.2d at 206; *accord Gregory*, 24 F.3d at 781. Any deprivation of due process would result from the College's denial of a requested name-clearing hearing, but here, Plaintiff is the one who rejected the College's offer. *Brown v. City of Niota, Tenn.*, 214 F.3d 718, 723 (6th Cir. 2000) ("[P]laintiffs must request a name-clearing hearing and be denied this hearing before they have suffered a deprivation of their liberty interest without due process of law."); *Waters v. Drake*, 105 F. Supp. 3d 780, 797-98 (S.D. Ohio 2015) (granting judgment on the pleadings where a university offered to provide a public name-clearing hearing and the plaintiff refused to participate in it until a court determined the proper parameters); *Awrey*, 2011 WL 2312175, at *3 (granting judgment on the pleadings where university employer "provided the [name-clearing] hearing at Plaintiff's request").

Despite clear Sixth Circuit precedent on the issue, Plaintiff relies heavily on *Carter v. W. Rsrv. Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985),

---

connection with the College's decision to terminate Plaintiff. (ECF No. 57-5, PageID.1336.)

arguing that the parameters of his name-clearing hearing must be consistent with the *Carter* court's holding. Although he recognizes the case addresses the deprivation of property interests, which involves a harm distinct from the one implicated in a stigma-plus claim, Plaintiff contends that an individual who suffers from a "stigma-plus" liberty interest deprivation must still be provided an elaborate post-termination hearing if there is only an "abbreviated pre-termination hearing." (ECF No. 58, PageID.1346-50.) The Sixth Circuit, in analyzing the holding of *Loudermill v. Cleveland Board of Education*, 470 U.S. 532 (1985), explained in *Carter*:

> Although we do not here undertake to establish a format for post-termination hearings in general, it is clear that the required extent of post-termination procedures is inextricably intertwined with the scope of pre-termination procedures. Where, as here, a court has approved an abbreviated pre-termination hearing, due process requires that a discharged employee's post-termination hearing be substantially more "meaningful". At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him. The severity of depriving a person of the means of livelihood requires that such person have at least one opportunity for such a full hearing, so that he may challenge the factual basis for the state's action and may provide reasons why that action should not be taken

*Carter*, 767 F.2d at 273 (internal citations omitted). Even assuming an employer must comply with this language in *Carter*, the name-clearing hearing offered to Plaintiff *did* permit him to "attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him." *Id.*

In any event, even without the offered name-clearing hearing, it is clear Plaintiff was already afforded the process due to him. The court, in addressing his property interest claims, has discussed at length that Plaintiff was provided due process that was

consistent with *Loudermill*. (ECF No. 29, PageID.748-56.) As previously explained in the

court's order dated May 7, 2021, there was no due process deprivation that was

attributable to a government entity:

> [The College] has an obligation to provide notice and an opportunity to be
> heard. In compliance with the dictates of *Loudermill*, [the College]
> established a process by which Plaintiff received notice of termination and
> had the opportunity to participate in both a pretermination and post-
> termination hearing. Plaintiff's [union] . . . exercised its judgment to not
> pursue the available post-termination processes. There is no allegation
> that [the College] had any involvement in [the union's] deliberative
> processes, and the union's decision as Plaintiff's representative cannot
> support a claim that [the College] violated due process.

(ECF No. 29, PageID.756.) This post-termination hearing was to be held before a

neutral tribunal. (ECF No. 29, PageID.745.) Again, assuming a liberty interest existed in

Plaintiff's case, the College created an avenue for Plaintiff to rebut the charges in

MCOLES' Investigative Summary, which, according to Plaintiff, was relied upon in the

College's decision to terminate him.[12] (ECF No. 49, PageID.1131, 1192.) Even if the

College had publicized the Investigative Summary, the College provided an opportunity

under *Loudermill* that was sufficient to not only protect Plaintiff's property interest but

also to clear his name of any alleged stigma at the pre-termination hearing and post-

termination hearing—and still, the College granted an *additional* opportunity to clear his

name. *See Welling*, 535 F. Supp. 2d at 891 (finding that the plaintiff, in effect, had

already received a name-clearing hearing where he was afforded the opportunity to

participate in an evidentiary hearing before Ohio's Unemployment Commission

---

[12]     The court, however, has already explained that based on the complaint, the
College's decision to terminate Plaintiff was independent of the MCOLES Investigative
Summary. (*See* ECF No. 46, PageID.1068 ("Plaintiff would have been terminated
regardless of MCOLES' investigation.").)

regarding his termination); *Shealy v. Caldwell*, 16 F. App'x 388, 396 (6th Cir. 2001)

("Plaintiffs were afforded the opportunity at the predisciplinary hearing to respond to the

charges made against them and to clear their names."); *accord Berkery v. Wissahickon*

*Sch. Bd.*, 99 F. Supp. 3d 563, 573 (E.D. Pa. 2015), *aff'd sub nom.* 628 F. App'x 109 (3d

Cir. 2015). After his termination, Plaintiff was personally represented by his union, and

its decision to not take advantage of the College's post-termination hearing procedures

is attributable *only to his union*, not to the government. (*See* ECF No. 29, PageID.753-

56.) *Cf. Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) (holding the state does not

deprive an employee of a property interest where there is an opportunity for a post-

deprivation where the complainant declines or fails to take advantage of the

procedures); *see also Schleck v. Ramsey Cty.*, 939 F.2d 638, 642-43 (8th Cir. 1991)

(finding that the plaintiffs who requested a name-clearing hearing "were afforded a pre-

termination hearing that under *Loudermill* was sufficient to protect their liberty interest

as well as their property interest," and that although they declined to avail themselves of

a post-termination hearing, the state had offered an "extensive" opportunity that allowed

the "introduction of evidence and cross-examination of witnesses"). Thus, Plaintiff's

amendment would be futile.

## CONCLUSION

For the reasons stated above, the court finds it necessary to deny Plaintiff's

motion for leave to amend. The additional liberty interest claim would not survive a

motion to dismiss, particularly where Plaintiff was offered ample opportunity to clear any

stigma associated with the Investigative Summary; no government entity denied him a

chance to do so. The case will proceed as to Plaintiff's substantive due process and

libel claims (Counts IV, V, and XIII). Accordingly,

IT IS ORDERED that Plaintiff's "Motion for Leave to File Second Amended

Complaint" (ECF No. 49) is DENIED.

s/Robert H. Cleland                         /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 20, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 20, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner                         /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-13175.BOWLES.MotionToFileSAC.MAZ.4.docx