UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GLENN BOWLES,

          Plaintiff,

v.                                                        Case No. 20-13175

MACOMB COMMUNITY COLLEGE, *et al.*,

          Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART NON-PARTY MICHIGAN COMMISSION ON LAW
ENFORCEMENT STANDARDS' MOTION TO QUASH SUBPOENA**

Pending before the court is non-party Michigan Commission on Law Enforcement Standards ("MCOLES")'s motion to quash subpoena (ECF No. 69). The motion has been fully briefed. The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will grant in part and deny in part the motion.

### I.   BACKGROUND

Plaintiff Glenn Bowles brings this action, alleging various federal and state claims arising from the termination of his employment as an adjunct instructor at the Macomb County Police Academy. (ECF No. 12.) He alleges that he was wrongfully accused of inappropriately touching students and using excessive force during teaching. The court has granted two motions to dismiss brought by various Defendants. (ECF Nos. 29, 46.) Three of Plaintiff's claims remain: two substantive due process claims under §1983 against Defendant Elizabeth Darga in her individual capacity and against Macomb County (Count IV), and a state law libel claim against Defendant Darga (Count XII).

Plaintiff's libel claim against Defendant Darga is based on her assertion in an email dated December 14, 2019 that Macomb County Sheriff's Office ("MCSO") employees, who were interviewed by an MCOLES investigator, were "mistreated/victimized" by Plaintiff (ECF No. 12, PageID.281-82.)

Plaintiff has subpoenaed MCOLES for the production of an investigative report dated September 23, 2019 (the "Report"), which contains the summaries of interviews with the police cadets about Plaintiff's misconduct. (ECF No. 69, PageID.1434-35; ECF No. 69-3; ECF No. 73, PageID.1481.) MCOLES moves the court to quash Plaintiff's subpoena on the ground that the Report is protected from disclosure by the law enforcement privilege, and in the alternative, to issue a protective order barring disclosure of the Report to non-parties without the court's permission. (ECF No. 69, PageID.1425.)

## II.  STANDARD

Nonparties to litigation may be subpoenaed to produce documents and other tangible things. Fed. R. Civ. P. 34(c). Federal Rule of Civil Procedure 45 governs the limits of a party's subpoena power and provides that the court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). "The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir. 1999).

## III. DISCUSSION

The parties do not dispute the existence of a qualified law enforcement privilege, which is "designed to prevent disclosure of information that would be contrary to the

2

public interest in the effective functioning of law enforcement." *In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2011 WL 1790189, at *6 (E.D. Mich. May 10, 2011) (Borman, J.) (citations and internal quotations marks omitted). The parties also agree to the consideration of ten factors in determining whether this privilege applies:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* (quoting *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C. 1998)). "No single factor is dispositive." *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 160 (D.D.C. 2017). "The court has considerable leeway weighing these factors in the undertaking of the essential balancing process and the nature of the case presented may warrant consideration of additional factors." *Tuite,* 181 F.R.D. at 177. However, "the balancing test for determining whether the law enforcement privilege applies must be conducted with an eye towards disclosure." *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1210 (D.N.J. 1996); *Tuite*, 181 F.R.D. at 177 ("[I]t is appropriate to conduct the balancing test for determining whether the law enforcement privilege applies with an eye toward disclosure."). As the Supreme Court has stated, "[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor

expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974).

The parties agree to the application of factors 1-3 and 5-7, with factors 1-3 favoring non-disclosures and factors 5-7 favoring disclosures. (ECF No. 69, PageID.1441-45; ECF No. 73, PageID.1485-87.)[1] The court finds that the remaining factors favor disclosure.

Factor 4 asks "whether the information sought is factual data or evaluative summary." *In re Packaged Ice Antitrust Litig.*, 2011 WL 1790189, at *6. There is no dispute that the identity of the interviewees is factual data. However, MCOLES asserts that the Report is an evaluative summary, as it does not contain verbatim transcripts, but rather synopses, of the exchanges with the cadets. In this instance, when the stated purpose of the interviews was to allow "the recruits the opportunity to provide honest feedback about their academy experience" (ECF No. 69, PageID.68), the information contained in the Report would be more "simple interview materials" rather than "confidential law enforcement methods and tactics." *Santiago v. City of Chicago*, No. 09 C 3137, 2010 WL 1257780, at *2 (N.D. Ill. Mar. 26, 2010). Unlike in the interviews done in criminal investigations, like those in *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 8 (D.D.C. 2010), few confidential law enforcement methods and tactics could imaginably be required when "the recruits were willing to give [MCOLES] field representatives full and frank descriptions of what occurred." (ECF No. 69, PageID.68-69.) *See Fed.*

---

[1] MCOLES, however, also argues that the first factor – "the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information" – should be given more substantial weight. (ECF No. 69, PageID. 1501.)

4

*Election Comm'n v. Rivera*, 335 F.R.D. 541, 548 (S.D. Fla. 2020) ("The 'technique' involved here – interviewing fact witnesses and writing a report summarizing what the witness said – is hardly confidential (and is not unique to law enforcement, in any event). This is a civil enforcement proceeding, not a criminal investigation or prosecution, and the investigation has been completed."). Even though disclosure may reflect the investigator's judgment about which questions to ask and which statements merited inclusion in the Report, *id.*, the existence of evaluative materials alone does not tip the scales in favor of nondisclosure. *See Groark v. Timek,* 989 F. Supp. 2d 378, 392 (D.N.J. 2013) (indicating that "even if the records contain "evaluative" materials they are not shielded and may be discovered"); *Tuite*, 181 F.R.D. at 180 ("Typically, courts require reports containing both factual and evaluative materials to be disclosed in civil rights actions brought pursuant to 42 U.S.C. § 1983.").

Factor 8 – asking whether Plaintiff's suit is nonfrivolous and brought in good faith – also weighs in favor of disclosure. Facing this factor, MCOLES asserts that it "agrees with Defendant Darga that Plaintiff's claims lack merit, that Plaintiff has failed to state a claim upon which relief can be granted, that she is immune from this lawsuit, and that substantial truth is a total defense to the libel claim." (ECF No. 69, PageID.1446.) However, MCOLES takes no effort to elaborate on any of these conclusory assertions; instead, it merely refers the court to certain paragraphs in Defendant Darga's Answer to Plaintiff's Amended Complaint, which are hardly substantive. (*Id.*) It is well accepted that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its

5

bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (citation and alterations in original omitted). MCOLES's self-serving agreement with Defendant Darga's defenses does not tip this factor in its favor. *Alexander v. F.B.I.*, 186 F.R.D. 154, 167 (D.D.C. 1999) ("Importantly, across-the-board claims of law enforcement privilege supported only by conclusory statements will not suffice."). Consequently, this factor goes against MCOLES – the burden bearer – and supports disclosure.

Factor 9 focuses on the availability of the information sought through other discovery or from other sources. The court cannot agree with MCOLES that the substance of the allegations against Plaintiff made in the interviews is "already part of the record." (ECF No. 69, PageID.1446.) The few paragraphs overviewing "Recruit Allegations" against Plaintiff in MCOLES's Investigative Summary do not provide the substance of those allegations – such as the who, what, where, when, and how. (ECF No. 18-4, PageID.507.) The court also is not persuaded that "Plaintiff could have obtained that information simply by deposing the recruits in Class 105" or interviewing them. (ECF No. 74, PageID.1504). Thirty-six cadets were interviewed (ECF No. 18-4, PageID.506-07), so it would be an overly burdensome undertaking for Plaintiff to do what MCOLES has suggested, especially when the identity of the interviewees is unknown. Additionally, the interviews documented in the Report were taken several years ago, and witnesses' memory have likely faded. Moreover, it is doubtful that the individuals who complained about Plaintiff would be "willing to give . . . full and frank description of what occurred" to Plaintiff or his attorney (ECF No. 69, PageID.1434-35.)

The importance of the information sought, which concerns Factor 10, further supports disclosure. MCOLES has not fully developed any argument as to why the

6

information sought from the Report is not relevant to Plaintiff's claim against Defendant Darga. (ECF No. 69, PageID.1447; ECF No. 74, PageID.1505.) While Defendant Darga is not named in the Report (ECF No. 69, PageID.1447) and it was not provided to her (ECF No. 74, PageID.1505), it is apparent from her December 14, 2019 email that the individuals whom she claimed to be "mistreated/victimized" by Plaintiff were interviewed. (ECF No. 73, PageID.1481.) The identity of the complainants and the substance of the allegations against Plaintiff are ostensibly probative to the basis of Defendant Darga's allegedly libelous assertion and Plaintiff's rebuttal thereto.

The court is conscious of the privacy interests of third parties unrelated to this action. However, both Plaintiff and MCOLES do not object to the entry of a stipulated protective order restricting the use of the Report outside this lawsuit. (ECF No. 69, PageID.1448-51; ECF No. 73, PageID.1489). The court is satisfied that this measure would protect the personal and confidential information included in the Report. Fed. R. Civ. P. 26(c) ("[T]he court . . . may make any order which justice so requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); see *Flagg ex rel. Bond v. City of Detroit*, 268 F.R.D. 279, 298 (E.D. Mich. 2010) (Rosen, J.) ("The Sixth Circuit has stated that protective orders are 'commonly granted . . . as a means of protecting the privacy interests of nonparties while yet serving the needs of litigation.'") (citing *Knoll v. Am. Tel. & Tel. Co.,* 176 F.3d 359, 365 (6th Cir. 1999)).

## IV. CONCLUSION

IT IS ORDERED that "Non-party Michigan Commission on Law Enforcement Standards [sic.] Motion to Quash Subpoena" (ECF No. 69) is GRANTED IN PART and

DENIED IN PART. The September 23, 2019 investigative report is to be produced under a stipulated protective order. MCOLES and Plaintiff are directed to confer and agree on a proposed protective order to be submitted to the court no later than November 2, 2022.

s/Robert H. Cleland          /<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated: October 26, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 26, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner          /<br>
Case Manager and Deputy Clerk<br>
(810) 292-6522

S:\Cleland\Cleland\NTH\Civil\20-13175.BOWLES.MotiontoQuashSubpoena.NH.docx